**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD KRASIL,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN BETZE *et al.*,<br><br>Defendants. | Civil Action No. 22-6914 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Brian Betze ("Betze"), Molly Avery ("Avery"), and Curtis Wyers ("Wyers") (together, "Defendants") Motion to Dismiss pro se Plaintiff Edward Krasil's ("Plaintiff") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 29). Plaintiff, in response, filed a Motion to Strike (ECF No. 32) and a Motion for a More Definite Statement (ECF No. 33). Defendants opposed. (ECF Nos. 34, 35.) The Court, in its February 14, 2023, Memorandum Order, denied Plaintiff's Motions and granted leave to file a proper opposition to Defendants' Motion to Dismiss. (ECF No. 48.) Plaintiff properly opposed (ECF No. 49), and Defendants did not reply. The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Defendants' Motion.

---

[1] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

## I.    BACKGROUND[2]

Plaintiff brings this action in response to Defendants' enforcement of the "BOOK BAGS/PURSES" policy (the "Bag Policy") implemented at Robbinsville High School ("RHS") in Robbinsville, New Jersey. (Compl. 1, 3, ECF No. 1.) At the time of filing, Plaintiff was a student at RHS,[3] Betze was the Superintendent of Robbinsville Public Schools, Avery was the Principal of RHS, and Wyers was the Assistant Principal of RHS. (*Id.*) The Bag Policy reads, in relevant part: "All students are permitted to carry clear book bags only. Purses and oversized bags are not permitted. Students may carry electronic device(s) in a small sleeve/protective cover, a water bottle, book(s)/notebook(s) and a small purse." (Student Handbook 1, Compl. Ex. A, ECF No. 1-3.)

A few weeks into the 2022-2023 school year, Wyers "mention[ed] to other students and [Plaintiff] in the halls to get a clear bag" in accordance with the Bag Policy. (Pl.'s Aff. 1, ECF No. 1-4.) Because the Bag Policy was originally implemented during the 2021-2022 school year but never specifically enforced, Plaintiff decided to "wait a couple of weeks," hoping that the school officials would stop "annoying" him about it. (*Id.*) Plaintiff thereafter continued "carrying [his] standard backpack to school." (*Id.*) One day during first period, Plaintiff's teacher walked around the class and sent any students who did not have a clear backpack to the office. (*Id.*) Plaintiff was one of these students. (*Id.*) While at the office, Plaintiff was forced to use one of the school's clear backpacks. (*Id.*) A few days later, Wyers again saw Plaintiff using an unapproved bag, and the

---

[2] In considering the instant Motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[3] It appears that Plaintiff is no longer a student at RHS. (Defs.' Br. 7, ECF No. 58 ("[Plaintiff] is no longer enrolled in [RHS]. There is no reason for [Plaintiff] to appear at the high school.").) Plaintiff does not dispute this fact.

following day, the same teacher sent Plaintiff to the office again for violation of the Bag Policy. (*Id.* at 2.) While in the office, Plaintiff "complained about this harassment," and Wyers came to discuss why Plaintiff had not complied. (*Id.*) Plaintiff felt that his perspective was "immediately shunned." (*Id.*) Plaintiff was again given a clear backpack to use and required to leave his personal backpack in the office to pick up at the end of the day. (*Id.*)

According to Plaintiff, this "harassment" soon turned to "persecution." (*Id.*) On Friday, September 30, 2021 (which was "probably" the next day), Wyers, Plaintiff, and Avery talked as Plaintiff was walking out of school for the day. (*Id.*) Plaintiff maintains that even though he attempted his "best civility" during the conversation, it "went south." (*Id.*) Plaintiff subsequently left the school property and returned seeking out Wyers. (*Id.*) When he returned, he went to the office, where Wyers "radioed [] Avery something and had [Plaintiff] walk into the school's entrance room . . . locked [Plaintiff] in, and had [Plaintiff] stand there." (*Id.* at 3.) Avery then came with the School Resource Officer, Edward Vincent[4] ("Vincent") at which point Plaintiff began filming the interaction. (*Id.*) Avery, Vincent, and Plaintiff walked to Avery's conference room where Avery told Plaintiff that he could not continue to film and that he must keep his backpack outside of the conference room. (*Id.*) According to Plaintiff, he was "coerced into submission" before entering the conference room. (*Id.*) Plaintiff alleges that, while there, among other things, Avery "continued her emotional harassment," "repeat[ed] that she didn't want to hear anything about [Plaintiff's] rights," caused Plaintiff to cry, told Plaintiff that he "must follow her rules in her building," and asked to search Plaintiff's backpack. (*Id.*)

Over the course of the next week, Plaintiff wrote questions regarding the Bag Policy and delivered them to Avery. (*Id.*) Avery indicated that she would pass the questions along to Betze

---

[4] Edward Vincent is a defendant in this action but did not join in the instant Motion.

3

who would send them to a "legal expert" to answer. (*Id.*) After not hearing back for a couple of weeks, Plaintiff wrote and delivered more questions; and after another week went by, he delivered more questions. (*Id.*) Plaintiff eventually received an e-mail from Betze where Betze "refused to answer any of [Plaintiff's] questions." (*Id.*)

Plaintiff continued to go to school without a clear backpack, and he continued to have his infringing backpack taken from him. (*Id.* at 3-4.) During one visit to the office, Plaintiff was able to talk to Betze who allegedly told Plaintiff that Plaintiff "[does not] have any rights on school grounds." (*Id.* at 4.) Betze ended the conversation stating that "he wouldn't argue with [Plaintiff]." (*Id.*) The next day, Plaintiff again came to school with a noncompliant backpack, and Avery "extorted [Plaintiff] from [his] property."[5] (*Id.*) The following day, Plaintiff again came to school with a noncompliant backpack, and Avery again told Plaintiff that the only way he could go to class was to leave the backpack in the office. (*Id.*) Plaintiff characterizes this continued enforcement of the Bag Policy as "psychological harassment." (*Id.*) Plaintiff alleges that sometime after this encounter, Avery "said to her henchman that [Plaintiff] was no longer allowed to be in the school." (*Id.* at 5.)

The following day, Plaintiff and his father came to the school "per [] Avery's invitation." (*Id.*) However, when they arrived, Avery's "police officer" (presumably Vincent, although Plaintiff does not specify) did not allow Plaintiff or his father on the property. (*Id.*) The officer "told [them] that [RHS] was private property." (*Id.*) Avery eventually came to the entrance of the school and refused to allow Plaintiff's father to enter "because [he] didn't take her side." (*Id.*)

---

[5] The Court presumes this to mean that Avery took Plaintiff's noncompliant backpack from him, as she had done previously.

Avery then said that "because [Plaintiff] chose to listen to [his] father instead of her, she was going to punish [him] by banishing [him] from school for the whole week." (*Id.*)

Plaintiff filed this Complaint on November 29, 2022. Plaintiff asserts thirteen causes of action against Defendants including violations of both state and federal constitutions, various federal statutes, as well as a claim for negligent infliction of emotional distress. (*See generally* Compl.) On December 2, 2022, Plaintiff filed a Motion for Emergency Preliminary Injunction, prohibiting Defendants from enforcing the Bag Policy. (ECF No. 3). In response to this emergency application, the Court held a status conference on December 21, 2022. (*See* ECF Nos. 14, 22.) During the status conference, the Court rejected the emergent nature of the application and set a briefing schedule for the preliminary injunction. (*See* ECF No. 22.)

Since the status conference, Plaintiff has filed sixteen motions. (*See* ECF Nos. 24, 32, 33, 36, 37, 41, 44 (corrected), 47, 51, 52, 53, 57, 60, 65, 68, 70.) In a Memorandum Order dated February 14, 2023, the Court resolved seven of the Motions, reminding Plaintiff that, even proceeding pro se, he is still under the same Rule 11 obligations requiring him to certify that to the best of his knowledge "the claims, defenses, and other legal contentions *are warranted by existing law or by a nonfrivolous argument* for extending, modifying, or reversing existing law or for establishing new law." (Mem. Order 4, ECF No. 48 (quoting Fed. R. Civ. P. 11(b)(2)).) The following Motions from Plaintiff are still pending: Motion for Emergency Preliminary Injunction (ECF No. 3), Motion for Emergency Protective Order and Order to Show Cause (ECF No. 47), Motion for Clarification and Reconsideration (ECF No. 51), Motion for Summary Judgment (ECF No. 52), Motion to Supplement the Complaint and for Joinder of Additional Defendants (ECF No. 53), Second Motion to Supplement the Complaint and for the Joinder of One Additional Defendant (ECF No. 57), Motion in Opposition to Defendants' Letters (ECF No. 60), Motion to Strike (ECF

No. 65), Motion for Joinder of Additional Defendant and to Supplement the Complaint (ECF No. 68), and Motion Praecipe to Rule on Defendants' Motion to Dismiss (ECF No. 70).

Defendants moved to dismiss on January 3, 2023. (ECF No. 29.) The Motion to Dismiss is ripe for resolution.

## II.   LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Importantly, on a Rule 12(b)(6) motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A complaint must set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). In the end, a court will grant a motion to dismiss brought under Rule 12(b)(6) if the factual allegations

6

in the complaint are insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, "a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted). Thus, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

### III.    DISCUSSION

The Court first evaluates Plaintiff's Complaint. Because the Court finds that the claims do not plausibly state a claim upon which relief can be granted, the Court grants Defendants' Motion to Dismiss. Second, the Court addresses the myriad of pending motions Plaintiff filed.

#### A.    Plaintiff's Complaint

Plaintiff alleges thirteen causes of action against Defendants. The Court construes Plaintiff's claims as follows: (1) Count I and II – Violation of the Federal Administrative Procedures Act, 5 U.S.C. §§ 551-559 ("APA"), New Jersey Administrative Procedures Act, N.J.S.A. 52:14B-1 et seq. ("NJAPA"), and Federal and State Constitutions; (2) Count III – Unconstitutional Delegation of Power; (3) Count IV – Unconstitutional Exercise of Legislative Power; (4) Count V – Violation of Separation of Power; (5) Count VI – Violations of First, Fourth, Fifth, Ninth, and Thirteenth Amendments; (6) Count VII – Conspiracy to Interfere with Civil Rights; (7) Count VIII – Neglect to Prevent Violation of Constitutional Rights; (8) Count IX – Negligent Infliction of Emotional Distress; (9) Count X and XI – Violation of the Student

Handbook; (10) Count XII – Violation of Thirteenth Amendment; and (11) Count XIII – Violation of Property Rights. The Court evaluates each below.

 1. *Counts I and II*

In Counts I and II, Plaintiff alleges violations of the APA, NJAPA, and Federal and State Constitutions. As a foundational matter, Plaintiff asserts that Avery violated his federal and state constitutional rights because under these Constitutions "all men are created equal" and "[a]ll persons are by nature free and independent"; meaning, according to Plaintiff, that Avery did not "have the right to impose her will over [Plaintiff] while having no contractual relationship with him." (Compl. 16.)

Furthermore, according to Plaintiff, the Bag Policy is "arbitrary and capricious" which requires courts to "set aside agency action" under the APA. (*See id.* at 17; 5 U.S.C. § 706(2)(A).) Plaintiff contends that the Bag Policy is arbitrary and capricious because "there are already laws that promote security," and "[t]here is no evidence that such a policy can even guarantee any additional security." (Compl. 17.) Plaintiff also claims that implementation of the Bag Policy violates the NJAPA because Plaintiff never "authorized" Avery or the school to withhold his constitutional rights. (*Id.* at 15.) Plaintiff maintains that because he did not "authorize[] either . . . Avery or anyone else acting as 'school'" to enforce the Bag Policy, he was forced to "act against his will." (*Id.* at 15-16.) Plaintiff also contends that he did not receive any responses from Defendants regarding their position related to the Bag Policy. (*Id.* at 16.)

These claims are without merit. *First*, as another court has recognized in a related state matter, "[t]he founding documents of this country and this State do not create contractual obligations of Defendant or entitlements to Plaintiff." (*See* Compl., Ex. C, *Krasil v. Betze*, No. C-95-20 (N.J. Super. Ct. Ch. Div. 2020).)

*Second*, pursuant to the APA, "[a] person suffering legal wrong because of agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. The APA defines an "agency" as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1). "[I]t is clear on the face of [the statute] that an 'agency' must be a federal entity." *People For the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28, 36 (D.D.C. 2007). Here, Plaintiff alleges that Avery violated the APA. However, neither Avery (nor any Defendants) satisfy the definition of "agency" under the APA because none of them are federal agencies. (*See* Compl. 3 (all Defendants listed in their individual and official capacities); Defs.' Moving Br. 14, ECF No. 29-2.)

*Third*, nowhere does the NJAPA require the school to consult and receive authorization from Plaintiff regarding the Bag Policy. *See generally* N.J. Stat. Ann. 52:14B-1 et seq. Plaintiff, furthermore, provides no authority to support the proposition that the Student Handbook (which contains the Bag Policy) is governed by the NJAPA at all.

The Court, accordingly, dismisses Counts I and II.

2. *Counts III, IV, and V*

In Counts III, IV, and V, Plaintiff claims that under the Constitution "only Congress can make laws[,]" and under the New Jersey Constitution only the New Jersey Assembly can "enact legislation." (Compl. 18-19.) Therefore, according to Plaintiff, "delegation of legislative authority to the Executive Branch, which afforded [Avery] the power to determine the rights of every person at RHS" is unconstitutional. (*Id.* at 18.) Similarly, Plaintiff claims that because Avery is not a part of the New Jersey Assembly, Avery was not permitted to enact the Bag Policy. (*Id.* at 19.) Plaintiff

9

claims that Avery, as a member of the executive branch, "violates the Separation of Power between the Executive and the Legislative branches of government." (*Id.*)

These claims are wholly without merit. "A delegation of legislative power to the Executive Branch is permissible under Supreme Court precedent where Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119, 127 (D.D.C. 2007) (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)); *see also Mistretta*, 488 U.S. at 386 n.14 ("[R]ulemaking power originates in the Legislative Branch and becomes an executive function only when delegated by the Legislature to the Executive Branch."). Congress delegated authority to the Executive Branch to develop the Department of Education in the Department of Education Organization Act stating:

> The Congress declares that the establishment of a Department of Education is in the public interest, will promote the general welfare of the United States, will help ensure that education issues receive proper treatment at the Federal level, and will enable the Federal Government to coordinate its education activities more effectively.

20 U.S.C. § 3402 et seq.

The New Jersey Constitution functions in a similar manner. At the state level, the "concept of separation of powers . . . 'is not an end in itself, but a general principle intended to ensure that the system of checks and balances remains vital.'" *Commc'ns. Workers of Am., AFL-CIO v. Christie*, 994 A.2d 545, 562 (N.J. Super. Ct. App. Div. 2010) (quoting *State v. Abbati*, 493 A.2d 513, 521 (1985)). A branch of state government may also "delegate certain of its powers to another branch" or "choose to share some of its power with another branch." *Id.* at 562-63. New Jersey has done so here.

The Court, accordingly, dismisses Counts III through V.

10

3.  *Counts VI, VII, VIII, X, XII*

Counts VI, VII, VIII, X, and XII involve causes of action under 42 U.S.C. §§ 1983, 1985, and 1986. Plaintiff alleges violations of the First, Fourth, Fifth, Ninth, and Thirteenth Amendments. (Compl. 19, 25.) In conclusory fashion, Plaintiff lists the constitutional rights that he believes Avery violated, including the right to: enjoy liberty, possess property, pursue safety and happiness, due process of law, equal protection under the law, be secure against unreasonable searches, just compensation for private property taken, privacy, and other natural and unalienable rights. (*Id.* at 20.) Plaintiff alleges that "all [the] people working at [RHS] . . . conspired together, in a coordinated effort . . . to deprive [Plaintiff] and all others coming to RHS of their constitutionally secured rights" in violation of § 1985 (Conspiracy to interfere with civil rights). (*Id.* at 21.) Plaintiff alleges that the same people "had an opportunity to speak out against this conspiracy . . . [and] . . . . None of them chose to do so" in violation of § 1986 (Action for neglect to prevent). (*Id.*)

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. It is well-settled that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Wright-Gottshall v. State*, No. 21-18954, 2023 WL 3183288, at *6 (D.N.J. May 1, 2023) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71

11

(1989)); *see also Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013) ("The state's sovereign immunity . . . is preserved under Section 1983; a state [agency or department] is therefore not a 'person' who may be sued under Section 1983.") The Court, accordingly, dismisses Plaintiff's claims against Defendants in their official capacities as to these Counts.

To state a Section 1983 claim against Defendants in their individual capacities, Plaintiff must allege (1) that Defendants deprived him of a federal right, and (2) Defendants acted under color of state or territorial law. *Byrd v. Atl. City Hous. Auth.*, No. 19-18575, 2023 WL 2662332, at *5 n.3 (D.N.J. Mar. 28, 2023) (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)). Plaintiff alleges several constitutional violations, and the Court will endeavor to consider each of the amendments that Plaintiff lists. Because, however, the Court is unable to conceive of any meritorious claims, it dismisses all claims based on the amendments listed.

*First*, Plaintiff alleges a constitutional violation under the First Amendment. (Compl. 19-20; 22-23.) In order to allege a retaliation claim under the First Amendment, a plaintiff must allege: (1) "constitutionally protected conduct"; (2) "retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights"; and (3) "a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2000)). Here, Plaintiff has not alleged sufficient facts to identify any constitutionally protected conduct. (*See generally* Compl.) Plaintiff's conduct in question—refusal to use a clear backpack—is not in and of itself protected, and Plaintiff has alleged no facts to suggest otherwise.[6] (*See id.*) As such, Plaintiff is

---

[6] Plaintiff also alleges that Avery "discriminate[d] against [him] because of [his] religious beliefs and national origin." (Pl.'s Aff. 8.) Plaintiff claims that the clear backpack is a "BADGE" and a "sign of obedience . . . dehumanizing [him] as was previously done to other Jews of Europe." (*Id.* at 7, 8.) The Court, however, still does not find a sufficient link between refusing to use a clear backpack and a violation of rights related to his religion or national origin.

unable to state a plausible First Amendment violation.

*Second*, Plaintiff alleges a constitutional violation under the Fourth Amendment. (Compl. 19-20.) The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The school setting, however, "requires some easing of the restrictions to which searches by public authorities are ordinarily subject." *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985). School officers do not need probable cause to search, rather, "the search must instead be reasonable under the circumstances." *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488, 505 (D.N.J. 2019). This means that a search must be "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quoting *T.L.O.*, 469 U.S. at 341). A search is considered justified at its inception when "there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.* (quoting *T.L.O.*, 469 U.S. at 341-42).

Based on the allegations in the Complaint and Plaintiff's Affidavit, it is unclear whether an actual search occurred. If a search occurred, the details surrounding the search are similarly unclear. Plaintiff's only allegation related to any search is as follows: "Then [Avery] tried to ask a personal question about me and have more of a good cop conversation. Only so that later she can have her, as she called it, 'trust, but verify' search of [Plaintiff's] bag." (Pl.'s Aff. 3.) Plaintiff does not state whether Avery actually did search his bag. (*See generally id.*) Nor does he state whether he offered his consent or not. (*Id.*) Without further allegations, the Court is unable to determine the contours of the specific search, if any, in question. The Court, accordingly, does not find a constitutional violation under the Fourth Amendment.

*Third*, Plaintiff alleges a violation of the Fifth Amendment. (Compl. 19-20.) The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Fifth Amendment, however, restricts only federal governmental action. *Myers v. County of Somerset*, 515 F. Supp. 2d 492, 504 (D.N.J. 2007) (quoting *Nguyen v. U.S. Cath. Conf.*, 719 F.2d 52, 54 (3d Cir. 1983)). The rights provided by the Fifth Amendment do not restrict actions of state officials. *Id.* Plaintiff, accordingly, cannot maintain a Fifth Amendment claim against Defendants because Defendants (as school administrators) are state actors.

*Fourth*, Plaintiff alleges a violation of the Ninth Amendment. (Compl. 19-20.) The Ninth Amendment, however, "does not independently provide a source of individual constitutional rights." *Perry v. Lackawanna Cnty. Child. & Youth Servs.*, 345 F. App'x 723, 726 (3d Cir. 2009); *see also Clayworth v. Luzerne County*, 513 F. App'x 134, 137 (3d Cir. 2013) (affirming dismissal of a Ninth Amendment claim because the "Ninth Amendment does not independently provide a source of individual constitutional rights." (citation omitted)). Plaintiff, therefore, cannot maintain a Ninth Amendment claim.

*Fifth*, Plaintiff alleges a violation of the Thirteenth Amendment. (Compl. 19-20; 22-23; 25-29.) The Thirteen Amendment states that "[n]either slavery nor involuntary servitude . . . shall exist within the United States." U.S. Const. amend. XIII. In *United States v. Kozminski*, the Supreme Court held that:

> The primary purpose of the [Thirteenth] Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend to "cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.

487 U.S. 931, 942 (1988). Plaintiff alleges that the Bag Policy requires him to wear a "BADGE of slavery" akin to "German authorities" requiring "Jews . . . to wear badges." (Pl.'s Aff. 6, 9.) These allegations do not come close to a plausible Thirteenth Amendment claim. Plaintiff has not established a Thirteenth Amendment violation.

Based on the foregoing, Plaintiff has not alleged sufficient facts to establish a deprivation of a federal right as required for a § 1983 claim. Similarly, Plaintiff also fails to allege sufficient facts related to a conspiratorial agreement to deprive him of his rights, or to raise his allegations of a conspiracy "to a level that is plausible rather than merely conceivable." *See Ramziddin v. Onfri*, No. 22-2798, 2023 WL 2597588, at *2 (3d Cir. Mar. 22, 2023). Plaintiff states in a conclusory fashion: "Any reasonable man should have known that the actions . . . were violative of [Plaintiff's] and all others['] inalienable rights . . . . People . . . conspired together, in a coordinated effort . . . to deprive [Plaintiff] and all others coming to RHS of their constitutionally secured rights." (Compl. 21.) This is insufficient to raise a plausible conspiracy claim. Furthermore, because Plaintiff "failed to state a viable claim under § 1985, his § 1986 claim also fails." *Ramziddin*, 2023 WL 2597588, at *2 (citing *Rogin v. Bensalem Township.*, 616 F.2d 680, 696 (3d Cir. 1980) (explaining that § 1986 is a cause of action against people who know that a § 1985 violation is about to be committed and "fail[] to take action to frustrate its execution")).

For these reasons, the Court dismisses Counts VI, VII, VIII, X,[7] and XII.

---

[7] In Count X, Plaintiff also alleges a violation of 42 U.S.C. § 2000d. (Compl. 22-23.) This statute relates to programs receiving federal financial assistance, which Plaintiff has not alleged here. *See* 42 U.S.C. § 2000d; (*see generally* Compl.). Furthermore, this statute prohibits "exclu[sion] from . . . any program or activity." 42 U.S.C. § 2000d. Here, Plaintiff did not adequately allege that he was excluded from any program or activity—he was simply asked to use a clear backpack.

    4.  *Count IX*

  In Count IX, Plaintiff alleges negligent infliction of emotional distress. (Compl. 22.) In order to file a tort claim against Defendants, Plaintiff must have filed a notice of tort claim as required by the New Jersey Tort Claims Act. *See Queensbury v. Petrone*, No. 14-7230, 2015 WL 4715323, at *5 (D.N.J. Aug. 7, 2015); (Defs.' Moving Br. 30). A notice of tort claim must have been filed with the public entity within 90 days from the date on which the alleged tort accrued. *Queensbury*, 2015 WL 4715323, at *5 (citation omitted). Here, Plaintiff did not set forth any factual allegations in the Complaint regarding a notice of tort claim, and because Plaintiff has not opposed the motion on this ground (*see* Pl.'s Opp'n Br. 16, ECF No. 49), the Court must dismiss Count IX. *See Queensbury*, 2015 WL 4715323, at *5 (dismissing a negligent infliction of emotional distress claim on the same grounds).

    5.  *Count XI*

  In Count XI, Plaintiff lists and recites five New Jersey statutes that he alleges Defendants have violated: N.J. Stat. Ann. §§ 10:5-3, 10:5-27.1, 2A:53A-21, 18A:37-14, and 18A:37-15. (Compl. 23-25.) Four of the five statutes listed do not provide the bases for any individual cause of action against Defendants. *See* N.J. Stat. Ann. §§ 10:5-3 (legislative findings and declarations); 10:5-27.1 (provision regarding attorneys fees); 18A:37-14 (the definition of "harassment, intimidation or bullying" as it relates to discipline of pupils); and 18A:37-15 (the harassment, intimidation and bullying policy to be adopted by school districts). N.J. Stat. Ann. § 2A:53A-21 does provide a civil cause of action, but only for those who "engage[] in conduct that is an offense under the provisions of the 'New Jersey Code of Criminal Justice'." N.J. Stat. Ann. § 2A:53A-21. Here, there is no allegation that Defendants have committed any offense under the New Jersey criminal code. The Court, therefore, dismisses Count XI in its entirety.

      6.    *Count XIII*

In Count XIII, Plaintiff appears to argue that he owns the school property and, therefore, Defendants are not allowed to prevent him from entering that property. (Compl. 30 ("[Plaintiff] request[s] a declaration to confirm his clear absolute possessory right to the property known as [RHS]" and "[Plaintiff] request[s] a declaration that it is impossible for the owner of [RHS] . . . to commit a trespass . . . because he is an owner of the property.").) Plaintiff included with the Complaint a "Land Title Claim" stating: "be it known that [Plaintiff] is one of the people who wish to claim and acknowledge his part of the Allodial title to the land and property on the land mass [RHS]." (Compl. Ex. K.) The Court finds that Plaintiff has failed to adequately allege property ownership in RHS, a public-school building. Count XIII is dismissed.

      **B.**    **Plaintiff's Other Pending Motions**

Having granted Defendants' Motion to Dismiss in its entirety, the Court now addresses Plaintiff's remaining Motions. The following Motions are denied as moot: Motion for Emergency Preliminary Injunction (ECF No. 3); Motion for Emergency Protective Order and Order to Show Cause (ECF No. 47); Motion for Clarification and Reconsideration (ECF No. 51); Motion for Summary Judgment (ECF No. 52); Motion in Opposition to Defendants' Letters (ECF No. 60); Motion to Strike (ECF No. 65); and Motion Praecipe to Rule on Defendants' Motion to Dismiss (ECF No. 70). Plaintiff's Motion to Supplement the Complaint and for Joinder of Additional Defendants (ECF No. 53), Second Motion to Supplement the Complaint and for the Joinder of One Additional Defendant (ECF No. 57), and Motion for Joinder of Additional Defendant and to Supplement the Complaint (ECF No. 68) are denied. In any amended complaint, Plaintiff may include additional Defendants (and shall serve any new defendants in accordance with the local rules).

## IV.   CONCLUSION

For the foregoing reasoning, the Court grants Defendants' Motion to Dismiss. The Court will enter an order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE
