NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EDWARD KRASIL,

      Plaintiff,

        v.

BRIAN BETZE, *et al.,*

      Defendants.

Civil Action No. 22-6914 (RK) (RLS)

**OPINION**

**KIRSCH, District Judge**

      **THIS MATTER** comes before the Court upon the Motion to Dismiss filed by Defendants Brian Betze ("Betze"), Molly Avery ("Avery"), Curtis Wyers ("Wyers"), Eric Harrison ("Harrison"), and Methfessel & Werbel, Esqs. ("M&W") (collectively, "Moving Defendants"). ("Mot.," ECF No. 113.)[1] Defendants seek dismissal of *pro se* Plaintiff Edward Krasil's ("Plaintiff" or "Krasil") Amended Complaint. ("Am. Compl.," ECF No. 84.) Plaintiff filed a brief in opposition styled as a "Motion to Deny" the Motion to Dismiss. (ECF No. 115.) Also before the Court are eleven (11) motions filed by the Plaintiff seeking various forms of relief. (ECF Nos. 75, 77, 83, 86, 99, 105, 107, 111, 112, 115, and 116.) The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Moving Defendants' Motion to Dismiss, (ECF No. 113), is **GRANTED**. While not all Defendants' motions are ripe,

---

[1] Defendants Edward Vincent ("Vincent"), Michael Polaski ("Polaski"), and Bruce Darvas ("Darvas") joined the Moving Defendants' Motion to Dismiss on October 4, 2023. (ECF No. 117.) Defendants Patrick Carrigg ("Carrigg") and the Lenox Law Firm filed a Motion to Dismiss on October 5, 2023. (ECF No. 118.)

the Court has reviewed the merits of the claims against each and **DISMISSES** the Amended

Complaint in full. All other pending motions are **DENIED**.

## I.      BACKGROUND [2]

The underlying facts of this dispute have been thoroughly discussed and set forth in the

May 26, 2023 decision of the Honorable Michael A. Shipp, U.S.D.J., ("Mem. Op.," ECF No. 72),

dismissing Plaintiff's original November 29, 2022 Complaint, (ECF No. 1), for failure to state a

claim. Plaintiff's initial Complaint was brought against four defendants, consisted of thirty-two

pages (along with a ten-page statement of facts), and asserted thirteen counts.

On June 24, 2023, Plaintiff filed a ninety-one page Amended Complaint, along with a

twenty-three page statement of facts, renewing his allegations against Defendants Betze, Avery,

Wyers, and Edward Vincent ("Vincent"), and naming six additional Defendants, M&W, Carrigg,

the Lenox Law Firm, Polaski, Harrison, and Darvas and sets forth thirty counts.[3] The "Amendment

[sic] Complaint" is rambling and exceedingly difficult to discern. It consists of over one-hundred

total pages of unenumerated paragraphs and cites to Confucius; refers to Defendants, who are the

executive leaders of his high school and school district, various lawyers, and even the School

---

[2] The factual and procedural histories of this matter are well known to the parties and to the Court. The Court therefore recounts only the details necessary to resolve the motions discussed herein.

[3] The following is a complete list of Defendants named in the Amended Complaint:
- Patrick F. Carrigg, an attorney at the Lenox Law Firm and the Board Attorney for the Hamilton Township Board of Education;
- The Lenox Law Firm, which employs Defendant Carrigg;
- Brian Betze, Superintendent of Robbinsville Public Schools;
- Molly Avery, Principal of RHS;
- Curtis Wyers, Assistant Principal of RHS;
- Methfessel & Werbel, Esqs., legal counsel to Betze, Wyers, Avery, and Vincent;
- Eric L. Harrison, an attorney at Methfessel & Werbel, Esqs.;
- Bruce R. Darvas, Attorney for the Township of Robbinsville;
- Michael K. Polaski, Chief of Robbinsville Township Police; and
- Edward Vincent, School Resource Officer.

(*See* Am. Compl. at 7–8.)

Resource Officer, as members of the mafia; and contains full page excerpts from irrelevant Eighteenth and Nineteenth Century Supreme Court cases.

This matter arises out of Robbinsville High School's ("RHS") "BOOK BAGS/PURSES" Policy (the "Bag Policy" or the "Policy"). (*See* ECF No. 1-3.)[4] The Bag Policy, implemented during the 2021–2022 school year, states, in relevant part: "All students are permitted to carry clear book bags only. Purses and oversized bags are not permitted. Students may carry electronic device(s) in a small sleeve/protective cover, a water bottle, book(s)/notebook(s) and a small purse." (*Id.*; Pl.'s Aff. at 1.) The Bag Policy was implemented school-wide, such that it applied to all students. (Pl.'s Aff. at 1; *see also* ECF No. 1-3.)

In the beginning of the relevant school year, RHS school personnel slow-walked enforcement of the Bag Policy in order, apparently, to give students a reasonable opportunity to obtain the appropriate book bag. (Pl.'s Aff. at 1.) Plaintiff, a student at RHS, refused to comply with the school-wide mandate. (Pl.'s Aff. at 1; Am. Compl. at 3.) Although Plaintiff knew of the Policy, and had many months to prepare for its enforcement, he decided "to wait a couple weeks" to comply in the hope that RHS would cease "annoying" him to conform. (Pl.'s Aff. at 1.) His non-compliance resulted in Plaintiff, along with all other students who failed to use a clear backpack, being sent to the principal's office, in an attempt to have Plaintiff and the others abide by the Policy. (*Id.* at 1–2.) Plaintiff continued to refuse to comply with the Bag Policy, prompting Avery and Wyers to provide Plaintiff with a clear backpack to use for the day and requiring Plaintiff to leave his noncompliant bag in the principal's office. (*Id.* at 1–2.) Apparently, Plaintiff was the only

---

[4] As noted above, Plaintiff's Amended Complaint is difficult to parse and fails to provide a clear picture of this litigation. As such, as a courtesy to Plaintiff, the Court also relies on facts from Plaintiff's Original Complaint and attached exhibits, ("Compl.," ECF No. 1; "Bag Policy," ECF No. 1-3; "Pl.'s Aff., ECF No. 1-4). *See Higgs v. Atty. Gen. of the U.S.,* 655 F.3d 333, 339 (3d Cir. 2011), as amended (Sept. 19, 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

student who persisted in flaunting the mandate, as Plaintiff does not refer to any other students who continued to refuse the new Bag Policy and does not allege that he was singled out from other students who also failed to comply. The Court notes that Plaintiff and his fellow students are not required to use a translucent book bag: Plaintiff was free to use no book bag and simply could have chosen to carry his books and belongings with no satchel. Instead, he flouted the Policy and filed the subject federal lawsuit.

On September 30, 2022, Wyers and Avery spoke with Plaintiff twice, including once with Defendant Vincent, the School Resource Officer, present. ("SOF," ECF No. 84-1 ¶¶ 44–45.) The Plaintiff was advised that he "must keep his backpack outside the conference room." (Pl.'s Aff. at 3.) Plaintiff claimed he was "coerced into submission" and was "emotional[ly] harass[ed]." (*Id.*)

Over the next few weeks, Plaintiff wrote and delivered to Avery a number of questions concerning the Bag Policy, believing they would be provided to Defendant Betze, the Superintendent of Robbinsville Public Schools. (*Id.*; SOF ¶¶ 47–48.) Plaintiff avers that he never heard back from Betze, thus prompting Plaintiff to write and drop off more questions to Avery. (Pl.'s Aff. at 3.) Betze emailed Plaintiff, advising him that he would not respond to Plaintiff's questions. (*Id.*)

Plaintiff continued to attend school with a non-compliant backpack, prompting school officials to "extort[] [Plaintiff] from [his] property," which the Court presumes to mean that school officials would not allow Plaintiff to use his non-compliant backpack during the school day on school property. (Pl.'s Aff. at 3–4.) Plaintiff alleges he was subjected to "physiological harassment" by Defendants, that they "[e]xtort[ed] money from the Plaintiff for the bag he didn't want," and "[r]estrict[ed] freedom of movement [by keeping Plaintiff] in [a] specific room." (Am. Compl. at 9; *see also* SOF ¶ 41; Pl.'s Aff. at 4.) Plaintiff had additional meetings with school

officials, including one on October 17, 2022 with Avery. (Am. Compl. at 26.) He wrote to Avery "with several more submissions over the course of several weeks." (*Id.*) Plaintiff sent further emails, with additional questions, to Betze, "including [a] detailed letter" on November 13, 2022. (*Id.* at 27.)

On November 27, 2022, Plaintiff alleges that he met with Vincent and Avery, where Vincent "threaten[ed] [Plaintiff's] life through the unprovoked threat of kidnapping . . . [and] to murder him on the spot." (*Id.* ¶¶ 56–61.) Although Vincent "asked Molly Avery if maybe it was not such a good idea to kidnap Edward Krasil," Avery "insisted that she wanted Edward Vincent to get rid of Edward Krasil one way or another." (*Id.* ¶¶ 64–65.) Plaintiff "was fearful for his life" because he had "little chance of defending himself against unprovoked aggression by the trigger-happy armed murderer," which presumably refers to Vincent. (*Id.* ¶¶ 69–70.) On January 3, 2023, Defendant Harrison, an attorney at Defendant M&W, and counsel for Betze, Avery, Wyers emailed Plaintiff, directing him to "communicate with others through him." (Am. Compl. at 50.) Plaintiff claims this was part of Defendants "abuse of process scheme." (*Id.*)

In the midst of the above events, Plaintiff filed this federal lawsuit against an initial group of Defendants. On November 29, 2022, Plaintiff filed his original Complaint, alleging thirteen causes of action. (ECF No. 1.)[5] Between December 2, 2022 and February 14, 2023, Plaintiff also filed a Motion for Emergency Preliminary Injunction, (ECF No. 3), and sixteen (16) other motions.

---

[5] The Court notes that this is not the first litigation initiated by the Krasil family concerning RHS. On October 9, 2020, Dimitry Krasil, Plaintiff's father, sued Betze in New Jersey Superior Court, alleging that "Defendant [failed] to provide [his] children a thorough and efficient system for [his] posterity's proper instruction and education" based on the school's response to the Covid-19 Pandemic. *See* Dec. 15, 2020 Order, *Dimitry Krasil v. Brian Betze*, MER-C-95-20. The Honorable Robert Lougy, P.J.Ch., dismissed the Complaint with prejudice, noting that Krasil's Complaint, "[bore] no resemblance — much less conformance — with pleadings as authorized by the Rules of Court" and which referred to Covid-19 mask measures as "dehumanizing demands . . . [which] remind[ed] [Krasil] of Nazi Germany," failed to state a claim. *Id.*
.

In his February 14, 2023 Memorandum Order, Judge Shipp ruled on seven of these Motions, and cautioned Plaintiff that Rule 11 obligated him "to certify that to the best of his knowledge 'the claims, defenses, and other legal contentions *are warranted by existing law or by a nonfrivolous argument* for extending, modifying, or reversing existing law or for establishing new law.'" (ECF No. 48 at 4 (quoting Fed. R. Civ. P. 11(b)(2)) (emphasis in original).)

On May 26, 2023, Judge Shipp dismissed the Complaint and denied ten additional pending motions, but permitted Plaintiff to file an Amended Complaint. (ECF Nos. 72, 73.) In his Memorandum Opinion, Judge Shipp methodically analyzed each of the thirteen (13) claims in Plaintiff's original Complaint. After analyzing each, Judge Shipp held that Plaintiff's "claims do not plausibly state a claim upon which relief can be granted." (Mem. Op. at 7.)

Plaintiff's Amended Complaint, filed on June 24, 2023, consists of an indecipherable rambling of robotic recitations of constitutional provisions and archaic statutes. Plaintiff asserts thirty counts against ten defendants, adding seventeen new counts and six additional defendants to his original Complaint. (ECF Nos. 84, 84-1.) Defendants Betze, Avery, Wyers, Harrison, and M&W filed a Motion to Dismiss the Amended Complaint on September 6, 2023, which is now pending before the Court. (ECF No. 113.)[6] Defendants Vincent, Polaski, and Darvas joined the Moving Defendants' Motion to Dismiss on October 4, 2023. (ECF No. 117.) Defendants Carrigg and the Lenox Law Firm filed a Motion to Dismiss on October 5, 2023. (ECF No. 118.)

Plaintiff also has filed numerous other motions requesting various types of relief. The following eleven (11) motions are pending: Motion for Clarification and Reconsideration, (ECF No. 75), Second Motion for Reconsideration, (ECF No. 77), Motion to Declare Memorandum and Order as Void, (ECF No. 83), Motion for Emergency Preliminary Injunction, (ECF No. 86),

---

[6] The Exhibits to Defendants' Motion to Dismiss were filed as ECF No. 114.

Motion for Sanctions, (ECF No. 99), Motion for Sanctions for Stephanie J. Viola and Patrick F. Carrigg, (ECF No. 105), Motion for Sanctions of Eric L. Harrison, (ECF No. 107), Motion for Hearing on Default of Patrick F. Carrigg and Lenox Law Firm and Sanctions Against Attorney Stephanie J. Viola, (ECF No. 111), Motion for Second Emergency Hearing/Conference on Emergency Preliminary Injunction, (ECF No. 112), Motion to Deny Defendants 12(b)(6) Motion Known as Document 113 or To Schedule for Oral Argument on Motions Known as Documents 113-1, 79, 77, 75, and 72, (ECF No. 115), and Motion for Rule 16 Conference to Expedite Disposition of the Action, (ECF No. 116).

## II.     LEGAL STANDARD

### A.     FEDERAL RULE OF CIVIL PROCEDURE 8

Federal Rule of Civil Procedure 8 sets forth the general rules of pleading. Fed. R. Civ. P. 8. The Rule requires a Complaint to have "a short and plain statement of the grounds for the court's jurisdiction"; "a short and plain statement of the claim showing that the pleader is entitled to relief"; "a demand for the relief sought"; and "allegations [that are] simple, concise, and direct." Fed. R. Civ. P. 8(a),(d). The Rule is meant to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Procedural rules should be applied "flexibl[y]" to *pro se* plaintiffs. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). This accommodation is "driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Higgs*, 655 F.3d at 339 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006)).

However, a plaintiff's *pro se* status does not permit him to ignore the requirements of the federal rules or the purposes they serve. "[A] litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because [he] proceeds pro se." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010) (citation omitted); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) ("[*Pro se* litigants] cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.") (quoting *Mala*, 704 F.3d at 245). Even a *pro se* plaintiff must "allege sufficient facts in [the] complaint[] to support a claim." *Mala*, 704 F.3d at 245 (citation omitted). Defendants hauled into court by a *pro se* plaintiff still need "fair notice" of the claims they will be expected to answer. *Twombly*, 550 U.S. at 555.

## B.   MOTION TO DISMISS UNDER RULE 12(B)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). However, the Court "need not credit bald assertions or legal conclusions" or allegations "involv[ing] fantastic factual scenarios lacking any arguable factual or legal basis" or that "surpass all credulity." *Degrazia v. F.B.I.*, No. 08-1009, 2008 WL 2456489, at *3 (D.N.J. June 13, 2008), *aff'd*, 316 F. App'x 172 (3d Cir. 2009) (citations and quotation marks omitted).

A court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are

based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions or a formulistic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). "Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth." *Valentine v. Unifund CCR, Inc.*, No. 20-5024, 2021 WL 912854, at *1 (D.N.J. Mar. 10, 2021) (citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)).

A *pro se* plaintiff's complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Cason v. Middlesex Cnty. Prosecutors' Off.*, No. 18-2101, 2022 WL 2871195, at *3 (D.N.J. July 21, 2022) (quoting *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002)). Notwithstanding the liberal interpretation, the complaint "may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013).

III.    **DISCUSSION**

The Court begins its analysis with Plaintiff's Amended Complaint and Moving Defendants' Motion to Dismiss. As the Court finds that Plaintiff does not plausibly allege facts upon which relief can be granted, the Court grants Moving Defendants' Motion to Dismiss and

dismisses the Complaint against all Defendants.[7] Next, the Court considers and denies Plaintiff's eleven (11) pending motions.

At the outset, before the Court addresses and analyzes each of Plaintiff's thirty counts, it must be noted that in Fourth Amendment jurisprudence, it is well-established that "students within the school environment have a lesser expectation of privacy than members of the population generally." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656–57 (1995) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 348 (1985) (Powell, J., concurring)); *T.L.O.*, 469 U.S. at 340 (holding warrantless search of student's purse was not a constitutional violation and noting that "[i]t is evident that the school setting requires some easing of the restrictions to which searches by public authorities are ordinarily subject"); *Gruenke v. Seip*, 225 F.3d 290, 304 (3d Cir. 2000) (stating there are "circumstances in which school authorities, in order to maintain order and a proper educational atmosphere in the exercise of police power, may impose standards of conduct on students that differ from those approved by some parents").

Furthermore, courts around the country give great deference to school officials in effectuating policies and procedures to protect student safety. *See Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 149 (3d Cir. 2005) (finding nearly six hour detention of student reasonable where student was alleged to have sexually assaulted fellow student); *Sabbah v. Springfield Sch. Dist.*, No. 19-5564, 2021 WL 2138792, at *1 (E.D. Pa. May 26, 2021) (stating that "[s]chools are expected to ensure a safe learning environment for their students and staff" and upholding search of notebook and suspension of student accused of making threats of violence);

---

[7] In accordance with 28 U.S.C. § 1915(e)(2), "[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." Therefore, while not all Defendants moved to dismiss, the Court dismisses claims against all Defendants "pursuant to 28 U.S.C. § 1915(e)(2) for Plaintiff's failure to state a claim . . . for which relief may be granted." *Mason v. City of Philadelphia*, No. 13-5163, 2014 WL 4473724, at *7 n.16 (E.D. Pa. Sept. 10, 2014).

*K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, No. 14-145, 2015 WL 5039460, at *12 (D.N.J. Aug. 26, 2015) (upholding confiscation and search of student's notebook where student had sketched drawings of weapons, noting that "school officials must effectively balance a student's privacy interest against the school's equally legitimate need to maintain an environment in which learning can take place" (citations and quotation marks omitted)); *Doe v. Little Rock Sch. Dist.*, No. 99-386, 1999 WL 33945744, at *4 (E.D. Ark. Aug. 26, 1999) (upholding constitutionality of school policy to allow for random searches of students with metal detectors and noting that "it is beyond peradventure that safety in our schools, and concomitantly, preservation of an atmosphere conducive to education, are of vital importance" (quoting People v. Dukes, 580 N.Y.S.2d 850, 853 (N.Y. Crim Ct. 1992)); *Desilets on Behalf of Desilets v. Clearview Reg'l Bd. of Educ.*, 627 A.2d 667, 673 (N.J. Super. Ct. App. Div. 1993) (upholding school policy requiring search of student's materials prior to field trip).

Epidemic incidents of extreme violence in our nation's schools need not be chronicled here. Requiring all students who choose to use a backpack to use a translucent one while at school appears clearly within the school district's discretion in an effort to ensure and promote school safety. The use of a particular kind of backpack is surely less onerous and invasive than the school actions authorized by various courts cited herein above.

## A.   AMENDED COMPLAINT

Plaintiff's Amended Complaint asserts thirty (30) causes of action against Defendants, including violations of the Federal Constitution, the New Jersey Constitution, New Jersey state criminal statutes, and tort claims. Many of these allegations are similar to those in Plaintiff's original Complaint. The Court first discusses the Amended Complaint's adherence to Rule 8's pleading requirements and then considers each respective claim below.

### 1. RULE 8

Plaintiff's ninety-one (91) page, with no numbered paragraphs, Amended Complaint, accompanied by a twenty-three (23) page "Affidavit of [F]acts," unquestionably bears no semblance to the mandate set forth by Rule 8. Its discursive ramblings are unintelligible for pages at a time, rendering the Court incapable of making any sense of Plaintiff's allegations. *See Itiowe v. United States*, 650 F. App'x 100, 103 (3d Cir. 2016) (affirming dismissal under Rule 8 where complaint was "virtually incomprehensible" and "unfocused" and where "[r]ather than attempt to concisely clarify and simplify . . . [Plaintiff's] amended complaint sought to add more participants"). First, the length of the Amended Complaint alone violates Rule 8's mandate that the complaint be "short and plain." *See e.g.*, *Wilcher v. Potter*, No. 08-2723, 2009 WL 235497, at *2 (D.N.J. Jan. 29, 2009) (139-paragraph amended complaint did not provide "short and plain statement" under Rule 8); *Brejcak v. Cnty. of Bucks*, No. 03-4688, 2004 WL 377675, at *2 (E.D. Pa. Jan. 28, 2004) (complaint spanning 216 paragraphs and 45 pages "[ran] afoul of the letter and spirit of the Federal Rules"). Second, the Amended Complaint omits many crucial dates of when various actions occurred. (*See, e.g.*, Am. Compl. at 9.); *Bey v. Super. Ct. of N.J.*, No. 23-3376, 2023 WL 4197180, at *2 (D.N.J. June 27, 2023) (complaint "does not clearly state the date on which the incidents occurred"). Third, the Amended Complaint fails to adhere to the "'plain' statement requirement, which prompts [the Court] to ask whether, liberally construed, a pleading 'identifies discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019)).

Here, Plaintiff does not make clear each Defendant's involvement, nor whether any elements of his claims are satisfied. The vast majority of Plaintiff's claims do not specify the

Defendant against whom he alleges the unlawful action, instead referring just to "Defendants." (*See e.g.*, Am. Compl. at 58–59.) Further, Plaintiff's conclusory statements regarding potential violations fail to provide "defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Smith v. Borow*, No. 19-8553, 2022 WL 1519222, at *3 (D.N.J. May 13, 2022) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Throughout many of Plaintiff's thirty claims, Plaintiff simply restates elements of the offense without providing any supporting facts. (*See e.g.*, Am. Compl. at 57–58.) Finally, Plaintiff's Amended Complaint lacks clarity and focus such that it is nearly impossible to decipher Plaintiff's allegations and the factual bases purportedly supporting them. *See Wexford Health*, 938 F.3d at 93 ("Naturally, a pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8."); *Miller v. Lanigan*, No. 12-4470, 2013 WL 1750138, at *2 n.3 (D.N.J. Apr. 23, 2013) ("A District court should not have to read and decipher tomes disguised as pleadings." (quoting *Lindell v. Houser*, 442 F.3d 1033, 1035 n.1 (7th Cir. 2006))).

The Amended Complaint here compels the Court and Defendants to try to sift through superfluous and irrelevant digressions, including quotations to Confucius, and various rhetorical questions such as, "Who has the property interest in Edward Krasil?" (*See, e.g.*, Am. Compl. at 18, 28.) Much, if not most, of the statements in Plaintiff's Affidavit of Facts do not meaningfully discuss the dispute at issue. (*See generally* SOF.) Accordingly, the Court concludes that the Amended Complaint fails to follow Rule 8's "short and plain" requirement. *Wexford Health*, 938 F.3d at 93; *Aemer v. Brewer*, No. 18-14021, 2019 WL 13260173, at *1 (D.N.J. Apr. 1, 2019), *aff'd sub nom.*, 808 F. App'x 73 (3d Cir. 2020) (noting that cases have been dismissed under Rule 8 "where they were found to be a labyrinthian prolixity of unrelated and vituperative charges that defied comprehension . . . confusing, ambiguous, redundant, vague and, in some respects,

unintelligible . . . and so verbose, confused and redundant that its true substance, if any, is well disguised" (citations and quotation marks omitted)).

In addition to the analysis under Rule 8, which in and of itself provides ample bases for dismissal, the Court will nonetheless review each count of the Amended Complaint on the merits as well.

### 2. COUNTS I, XI

In Counts One and Eleven, Plaintiff alleges violations of three New Jersey laws relating to theft — N.J. Stat. Ann. § 2C:20-3, N.J. § 2C:20-4, and N.J. § 2C:20-5 — as well as a claim for common law conversion. Plaintiff asserts that "Defendants intentionally took possession of Edward Krasil's properties without his consent," including his "labor and liberty," "outer properties such as his bag and his money," "internal properties such as his vocal cords, feet and brain activities," and "increased his blood pressure and caused him to lose a lot of hair." (Am. Compl. at 38.)[8]

Plaintiff alleges three forms of "theft" against Defendants: theft, formerly known as "larceny," theft by deception, and theft by extortion. *See State v. Powell*, 440 A.2d 1377, 1379 (N.J. Super. Ct. Law. Div. 1981) (describing history of New Jersey theft statues). Theft pursuant to N.J. § 2C:20-3 requires that a person "[1] unlawfully takes, or exercises unlawful control over, [2] movable property of another [3] with purpose to deprive him thereof." *State v. Geddes*, No. A-2350-20, 2023 WL 3994328, at *3 (N.J. Super. Ct. App. Div. June 12, 2023). Theft by deception, while similar, requires a showing that a person "[1] purposely obtains [2] property of another [3] by deception." *Id.* Finally, an individual is guilty of theft by extortion if they "purposely and

---

[8] As noted above, Plaintiff fails, in most instances, to specify which claims apply to each Defendant. As such, the Court will construe the claims as broadly brought against all Defendants named in the Amended Complaint, except where specified by Plaintiff.

unlawfully obtain[] property of another by extortion." *Kenworthy v. Lyndhurst Police Dep't*, No. 18-12822, 2020 WL 289555, at *12 (D.N.J. Jan. 21, 2020) (quoting N.J. § 2C:20-5)).

A claim for conversion requires "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Corestar Int'l Pte. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 127 (D.N.J. 2007). To constitute conversion, a defendant's conduct must "seriously interfere[] with the right of another to control it . . ." *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1190 (N.J. Super. Ct. App. Div. 2011) (quoting *Chicago Title Ins. Co. v. Ellis*, 978 A.2d 281 (N.J. Super. Ct. App. Div. 2009)).

Here, Plaintiff claims that Avery, "through her secretary, attempted to extort money from [him] for a 'clear bag' that he didn't order or want," and that on September 30, 2022, Plaintiff met with Avery, Wyers and Vincent in "principal's conference room," where Plaintiff was "forc[ed] . . . to turn over his property rights" to Avery. (SOF ¶¶41–46.) Plaintiff alleges conclusory statements that Defendants have "attempted to impose and exercise In Rem jurisdiction over Edward Krasil's property" or force Plaintiff to "involuntarily" leave his property at the school. (SOF ¶¶ 34, 72.) Indeed, Plaintiff alleges that on November 28, 2022, Avery and Vincent threatened him, "made [him] fear for his life" at RHS, and coerced him to leave his "property in order NOT to be kidnapped or murdered by Edward Vincent under the orders of Molly Avery." (*Id.* ¶¶ 68–72 (emphasis in original).) While the Court must construe Plaintiff's *pro se* pleading liberally, the Court need not "credit bald assertions or legal conclusions" or allegations "involv[ing] fantastic factual scenarios lacking any arguable factual or legal basis" or that "surpass all credulity." *Degrazia*, 2008 WL 2456489, at *3 (citations and quotation marks omitted).

Plaintiff alleges no facts to make these allegations remotely understandable. Plaintiff must allege facts sufficient to demonstrate that some specific property was taken. *Kenworthy*, 2020 WL

289555, at *12 (noting that "unlawfully obtain[ing]" the individual's property is "a necessary requirement" for theft). Charitably viewed, Plaintiff's theft complaints center on the times Defendants required him to leave his noncompliant backpack (his "property") in either Avery's or Wyers's office. (*See* Pl.'s Aff. at 2–3.) However, the facts alleged in the Amended Complaint do not demonstrate that Defendants intended to "deprive" Plaintiff of his property. *See Geddes*, 2023 WL 3994328, at *3.[9] There are no allegations contained therein that any Defendants intended or even desired to take Plaintiff's backpack from him; instead, Defendants simply enforced the Bag Policy while Plaintiff was on school property.

In addition, Plaintiff fails to allege that Defendants interfered so "seriously" with his property to satisfy the elements for a claim of conversion. *Bondi*, 32 A.3d at 1190. As Plaintiff alleges, he was "forc[ed] . . . to turn over his property rights" to Avery when they entered into the "principal's conference room" for a meeting, (SOF ¶¶44–46), or had to leave his non-compliant bag in Wyer's office to be picked up at the end of the day, (Pl.'s Aff. at 2). Requiring the Plaintiff to leave his backpack in the vice principal's office for a period or outside a conference room does not evidence that Defendants "exercise[d] . . . dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." *Ellis*, 978 A.2d at 288. This conduct does not rise to the level of a tort of conversion. Therefore, Counts One and Eleven are dismissed for failure to state a claim.

---

[9] Plaintiff's claims for theft or conversion of his "labor and liberty" and "vocal cords" fail for the additional reason that theft and conversion require the talking of tangible property. *See Megatel Mobile, LLC v. Tracfone Wireless, Inc.*, No. 17-3837, 2018 WL 4110928, at *2 (D.N.J. Aug. 29, 2018) (dismissing theft and conversion claims that did not relate to "tangible property").

### 3. COUNTS II, IV, V, XXI, XXII, XXIII, XXIV, XXV, XXVI

In Counts Two, Four, Five, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, and Twenty-Six, Plaintiff asserts causes of actions under 42 U.S.C. §§ 1983, 1985, and 1986, as well as violations of N.J. Stat. Ann. § 10:6-2, the New Jersey Civil Rights Act. Plaintiff asserts that Defendants violated the First, Second, Fifth, Sixth, Ninth, Thirteenth, Fourteenth Amendments of the United States Constitution, as well as various provisions of the New Jersey Constitution.

In each count, Plaintiff lists the alleged constitutional violations committed by Defendants. These include "retaliate[ion] against [him] for his speech," "intentional taking and destruction of private property for allegedly public use . . . including his labor and liberty [and] internal properties such as his vocal cords, feet, and brain activity," his right to a "[j]ury trial, and "the right to keep and bear Arms." (*See e.g.*, Am. Compl. at 39, 45, 66.) Throughout the counts, Plaintiff claims that "[h]arassments and intimidations committed by Defendants are unconstitutional on its face" but fails to provide any factual support for these bare assertions. (*Id.* at 67.) In other counts, Plaintiff merely sprinkles citations to the United States Constitution or to speeches by German theologian, Martin Niemöller, without reference to relevant facts underpinning his claims. (*See e.g.*, *id.* at 47, 74.)

Judge Shipp's prior Memorandum Opinion clearly and concisely articulates the reasons Plaintiff's Section 1983 claims fail under the First, Fourth, Fifth, Ninth and Thirteenth Amendments. Because Plaintiff fails to allege any new facts to cure the deficiencies identified by Judge Shipp in the Original Complaint, the Court adopts Judge Shipp's analysis and holding with respect to these claims under these Amendments, (*see* Mem. Op. at 11 –15), and thus, the Court

dismisses them.[10] *Martinez v. Cap. One Fin. Corp.*, No. 15-266, 2016 WL 3129621, at *3 (D.N.J. June 2, 2016), *aff'd sub nom.* 672 F. App'x 186 (3d Cir. 2017) (adopting holding of prior opinion dismissing claims and denying subsequent identical claims for failing to cure previously identified defects).

In his Amended Complaint, Plaintiff alleges a violation of the Second Amendment. (Am. Compl. ¶¶ 62–64.) The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II. Plaintiff asserts no facts in the Amended Complaint to support a Second Amendment violation, aside from random, haphazard quotations to the Constitution. For example, Plaintiff states, in a conclusory fashion, that "the second amendment [sic] right of the people to keep and bear Arms is as any property is under the sole and despotic dominion which one man claims and exercises over the external things of the world . . . and therefore may not be restricted in any way," (Am. Compl. at 64), but fails to allege facts to support a claim under the Second Amendment.[11]

Finally, Plaintiff asserts a violation of the Due Process Clause of the Fourteenth Amendment. This Clause states that "no state shall 'deprive any person of life, liberty, or property, without due process of law.'" *Toussaint v. Szeto*, No. 22-2446, 2022 WL 1541545, at *2 (D.N.J. May 13, 2022) (quoting U.S. Const. amend XIV)). There are both substantive and procedural components of the Fourteenth Amendment. *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133,

---

[10] Plaintiff also asserts violations under Sections 1985, 1986, and 2000d, but again fails to cure any deficiencies identified by Judge Shipp. The Court also dismisses those claims.

[11] As Plaintiff does not allege he attempted to bring a gun into RHS, it is not clear to the Court how Plaintiff's Second Amendment rights were violated. Further, even if Plaintiff had asserted facts that in some way demonstrated that RHS inhibited his Second Amendment rights, the school likely would succeed. *See D.C. v. Heller*, 554 U.S. 570, 626–27 (2008) (noting the legitimacy of "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings").

139 (3d Cir. 2000). Plaintiff does not specify which aspect he believes Defendants have violated, so the Court will address both.

"To state a claim for deprivation of procedural due process, a plaintiff must demonstrate that (1) he was deprived of an individual interest included within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Toussaint*, 2022 WL 1541545, at *2 (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)).

Plaintiff's Amended Complaint fails to allege facts sufficient to sustain a Due Process violation. In support of his claim, Plaintiff merely states that he "was deprived of his properties including property interest in education, of his character, his body and control of what is proper to him." (Am. Compl. at 65.) As discussed above, Plaintiff "does not expressly state what property or liberty interest of [his] Defendant allegedly interfered with" or demonstrate that he was subjected to a "total exclusion from the educational process." *Taylor v. Metuchen Pub. Sch. Dist.*, No. 18-1842, 2019 WL 1418124, at *3 (D.N.J. Mar. 28, 2019) (citations omitted); *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1081 (5th Cir. 1995) ("*De minimis* or trivial deprivations of liberty in the course of the disciplining of a student do not implicate procedural due process requirements."). Plaintiff's Amended Complaint fails to allege conduct that rises to the level beyond "*de minimis* or trivial deprivations" of any protected rights. *Hassan*, 55 F.3d at 1081. Moreover, Plaintiff fails to allege facts demonstrating a "total exclusion from the educational process." *Taylor*, 2019 WL 1418124, at *4 (citations omitted). Plaintiff makes no connection between using a compliant backpack during the school day and a deprivation of a liberty or educational interest.

Notwithstanding Plaintiff's ninety-one page Amended Complaint, his grandiose and inflammatory allegations of extortion, as well as his references to mafia nomenclature, at no time in the pleading does Plaintiff explain how he was extorted. It appears RHS was even willing to provide Plaintiff with a complaint backpack to use during the day, thereby saving Plaintiff the inconvenience of obtaining one from an outside vendor. (*See* Pl's. Aff. at 1.) While Plaintiff makes reference to RHS requiring payment for the bag, (*see id.*), Plaintiff fails to specify the price charged or whether RHS ultimately would have provided the bag complimentary. Either scenario does not alter the Court's analysis or findings. Plaintiff had a right to purchase a compliant backpack like the rest of his 900 plus classmates at RHS, or of course, to choose to carry his belongings without the use of any container.[12] It seems, therefore, that rather than deprive Plaintiff of education, RHS went above and beyond to allow Plaintiff to pursue his education.

Further, Plaintiff alleges no facts demonstrating or alleging that "the procedures available to him" were inadequate in any way. *Toussaint*, 2022 WL 1541545, at *2. In fact, upon a review of the entire Amended Complaint, Plaintiff recounts numerous meetings with Defendants to discuss the Policy. (*See, e.g.*, SOF ¶¶ 44–46.) Instead, it appears Plaintiff was dissatisfied with the outcome of the meetings, but not that he was denied an opportunity to be heard. (*See* Pl.'s Aff. at 1–3.) Therefore, the Court finds that Plaintiff has not alleged a Procedural Due Process Claim.

Similarly, Plaintiff fails to plead a substantive due process violation. To make out a substantive due process claim, "a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd Of Educ.*,

---

[12] The Court takes judicial notice that, per its website, RHS have over 900 students. *See* Robbinsville High School, *About RHS: Welcome to Robbinsville High School*, https://rhs.robbinsville.k12.nj.us/apps/pages/index.jsp?uREC_ID=462936&type=d (last visited Oct. 3, 2023).

587 F.3d 176, 190 (3d Cir. 2009) (citations omitted). Substantive due process claims "do not arise out of state-created liberty interests;" these rights "are founded not upon state law but upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Steele v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017) (quoting *Nunez v. Pachman*, 578 F.3d 228, 233 (3d Cir. 2009)). Any substantive due process claim that Plaintiff was deprived of education fails because "[i]t is well-established that public education is not a constitutionally protected fundamental right or liberty under the U.S. Constitution." *Doe #1 v. Delaware Valley Sch. Dist.*, 572 F. Supp. 3d 38, 68 (M.D. Pa. 2021) (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37 (1973)). In addition, Plaintiff fails to allege he was deprived of any property interest. To the extent Plaintiff complains about the property interest in his backpack, Plaintiff does not demonstrate that his property was ever taken from him beyond requesting he leave it outside a conference room or use a different bag throughout the school day. (Pl.'s Aff. at 1–3.) Plaintiff fails to allege facts that Defendants appropriated his property, and certainly not to the threshold of "shock[ing] the conscience." *Sch. Dist. Of Philadelphia*, 587 F.3d at 190. Therefore, any substantive due process claim under the Plaintiff's Fourteenth Amendment claim must be dismissed.

Because Plaintiff has not properly pled violations of Section 1983, Plaintiff's claims under the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-2, fail for the same reasons. *See Hottenstein v. City of Seal Isle City*, 793 F. Supp. 2d 688, 695 (D.N.J. 2011) (dismissing New Jersey Civil Rights Act claims "for the same reason the § 1983 claims fail"); *Chapman v. New Jersey*, No. 08–4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart."); *Desilets on Behalf of Desilets v. Clearview Reg'l Bd. of Educ.*, 627 A.2d 667, 673 (N.J. Super. Ct. App. Div. 1993) ("We are not persuaded that the New Jersey Constitution provides greater protection under the circumstances of

this case than its federal counterpart."). Accordingly, Plaintiff's NJCRA claims are also dismissed. For the above reasons, Counts Two, Four, Five, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, and Twenty-Six are dismissed.

### 4. COUNT III

In Count Three, Plaintiff alleges violations of the Federal and New Jersey Constitutions relating to "Unconstitutional Delegation" and "Unconstitutional Exercise" of both "Legislative and Judicial Powers" and a "Violation of Separation of Powers." (Am. Compl. at 41–45.) Plaintiff recycles this same argument from his original Complaint, which Judge Shipp addressed and dismissed. As Judge Shipp explained, "A delegation of legislative power to the Executive Branch is permissible under Supreme Court precedent where Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'" (Mem. Op. at 10 (quoting *Deft. of Wildlife v. Chertojf*, 527 F. Supp. 2d 119, 127 (D.D.C. 2007) (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)).) The New Jersey Constitution similarly allows for delegation to other branches. (*Id.*) As Plaintiff regurgitates these previously dismissed claims without any new facts or allegations, the Court again dismisses Count III.

### 5. COUNTS VI AND VII

Counts Six and Seven of Plaintiff's Amended Complaint allege federal and state Racketeer Influenced and Corrupt Organizations ("RICO") violations under 18 U.S.C. § 1962 and N.J. Stat. Ann. § 2C:41-2. To assert a federal RICO violation, a plaintiff must demonstrate "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998). An "enterprise" for RICO purposes is defined broadly to encompass some "structure, that is, a common purpose,

relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 368 (3d Cir. 2010). It requires "(1) an ongoing organization with some sort of framework for making or carrying out decisions; (2) that the various associates function as a continuing unit; and (3) that the enterprise be separate and apart from the pattern of activity in which it engages." *United States v. Irizarry*, 341 F.3d 273, 286 (3d Cir. 2003) (quoting *United States v. Pelullo*, 964 F.2d 193, 211 (3d Cir. 1992)). Properly pleading the existence of an enterprise requires more than "simply identifying the allegedly associated components[, as this] does not serve to put defendants on notice of the RICO claim alleged against them—just as merely listing the names of alleged conspirators would not give defendants adequate notice of an alleged conspiracy." *Brokerage Antitrust Litig.*, 618 F.3d at 369. A lack of specificity would subject defendants to an "inevitably costly and protracted discovery phase" even in the absence of a viable claim. *Id.* (quoting *Twombly*, 550 U.S. at 558).

Plaintiff fails to allege facts demonstrating the existence an enterprise sufficient for his RICO claims to survive. The Amended Complaint states that "Defendants, as an enterprise, have been engaged in the pattern and practice" of violating numerous state and federal laws. (Am. Compl. at 48.)[13] Further, Plaintiff avers that "[a]t all relevant times described in this Complaint, Defendants have been in an ongoing association for the purpose of executing essential aspects of the criminal deprivation, intimidation, and theft scheme." (*Id.* at 49.) Plaintiff cannot plead the existence of an enterprise by merely stating that Defendants act as one. Nor can he by referring to certain Defendants as the "consigliere," "capo," or "boss of the family." (*Id.* at 7–8.) "[C]onclusory

---

[13] The crimes which Defendants have allegedly committed, including theft and perjury, are discussed throughout this Opinion.

averments" that defendants "agreed horizontally among themselves" do not plausibly state a federal RICO claim. *See Brokerage Antitrust Litig.*, 618 F.3d at 326. As such, Plaintiff's attempts to turn RHS's Bag Policy and its enforcement into a RICO claim fails as a matter of law. *See DelRio-Mocci v. Connolly Props. Inc.*, 672 F.3d 241, 253 (3d Cir. 2012) (McKee, J., concurring) ("In dressing this landlord-tenant dispute as a federal RICO claim and seeking treble damages, this plaintiff has joined countless others who have fashioned such claims out of disputes that have nothing whatever to do with subverting crime rings or criminal syndicates.").

Plaintiff's New Jersey state RICO ("NJRICO") claims fail for similar reasons.[14] To allege a New Jersey RICO violation, a plaintiff must demonstrate: "(1) the existence of an enterprise; (2) that the enterprise engaged in activities that affected trade or commerce; (3) that the defendant was employed by, or associated with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise; (5) that the defendant participated through a pattern of racketeering activity; and (6) that the plaintiff was injured as a result of the conspiracy." *Ford Motor Co. v. Edgewood Props., Inc.*, 2009 WL 150951, at *10 (D.N.J. Jan. 20, 2009). Among these requirements, the "pattern of racketeering activity" requires plaintiff to allege "predicate acts" that are both "related" and "pose a threat of continued criminal activity." *Metz v. United Ctys. Bancorp*, 61 F. Supp. 2d 364, 372 (D.N.J. 1999). Plaintiff has not asserted facts to support any allegations that Defendants violated New Jersey criminal laws, nor that Defendants' actions pose any threat of continued activity. Plaintiff claims that "[f]raudulent letters were mailed accusing [him] of insubordination" and "Eric Harrison . . . emailed [him] [about Defendants'] demand to communicate with others through him." (Am. Compl. at 50.) These facts do not establish that

---

[14] NJRICO "is broader in scope than the federal statute, and . . . New Jersey courts take a liberal stance in permitting plaintiffs to plead NJRICO violations." *Marina Dist. Dev. Co., LLC v. Ivey*, 216 F. Supp. 3d 426, 436 (D.N.J. 2016) (citations and quotation marks omitted). Notwithstanding, for the reasons discussed herein, Plaintiff's NJRICO claims fail.

Defendants committed any criminal offenses or engaged in a pattern of such. Thus, Plaintiff's NJRICO claims fail. *See Twombly*, 550 U.S. at 556–57 ("Without more . . . a conclusory allegation . . . does not supply facts adequate to show illegality."); *Metz*, 61 F. Supp. 2d at 372 ("[P]laintiff's bald assertion does not convince the Court" of a pattern of criminal activity.) Therefore, the Court dismisses Counts Six and Seven.

### 6. COUNT VIII

Count Eight alleges common law fraud against the Defendants. [15] Fraud requires a Plaintiff to prove five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (citing *Jewish Ctr. of Sussex County v. Whale*, 432 A.2d 521 (N.J. 1981)). Fraud allegations must comport with Rule 9(b)'s heightened pleading requirement. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). As such, Plaintiff must "plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means." *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 433 (D.N.J. 2015) (quoting *Grant v. Turner*, 505 Fed. Appx. 107, 111 (3d Cir. 2012)). Further, as is the case in this litigation, where there are "multiple defendants, the plaintiff must plead fraud with particularity as to each individual defendant, as opposed to clustering together their allegedly fraudulent acts." *Peters v. U.S. Dep't of Hous. & Urb. Dev.*, No. 04-6057, 2006 WL 278916, at *4 (D.N.J. Feb. 1, 2006).

---

[15] Plaintiff's Amended Complaint alleges claims for "Fraud AND Deceit." (Am. Compl.) For the avoidance of doubt, the Court notes that common law fraud is "sometimes referred to as 'deceit.'" *Zorba Contractors, Inc. v. Hous. Auth., City of Newark*, 827 A.2d 313, 323 (N.J. Super. Ct. App. Div. 2003).

Plaintiff's Amended Complaint fails to satisfy the heightened pleading standard required for common law fraud. Plaintiff asserts that Defendants made false representations to Plaintiff "with an intent to defraud." (Am. Compl. at 52.) However, Plaintiff does not specify or explain any statements made by Defendants that were made with "intent to deceive." *Gennari*, 691 A.2d at 365. At most, Plaintiff references an email from Eric Harrison to Plaintiff. (Am. Compl. at 53.) As discussed above, this email contained no false statement; rather, it asked Plaintiff to communicate with the attorney representing his clients. Nowhere does Plaintiff allege a material misrepresentation, let alone the "date, time and place of the alleged fraud." *Riddell*, 77 F. Supp. 3d at 433. The Amended Complaint contains no facts relating to statements made by Defendants that Plaintiffs knew were false, aside from conclusory assertions that "representations [by Defendants] were false." (Am. Compl. at 52.) Defendants have not been "placed on notice of the precise misconduct with which they are charged." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (quotation marks omitted). Plaintiff has not properly pled common law fraud, and thus, this claim under Count Eight must be dismissed.

### 7.  COUNT IX

Count Nine of the Complaint asserts a claim for unjust enrichment. "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Bava v. Hamilton Farm Golf Club*, No. 08-5473, 2009 WL 2778108, at *3 (D.N.J. Aug. 28, 2009) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)).

Here, Plaintiff has not alleged sufficient facts to establish an unjust enrichment claim. Plaintiff claims that he "conferred a benefit on Defendants by performing labor, services and lost

properties for Defendants," "Defendants were aware of the benefit conferred upon them," and "Defendants retained that benefit without compensating" Plaintiff for said benefit. (Am. Compl. at 54.) However, Plaintiff cannot simply recite the elements of unjust enrichment to plead his claim. *See Twombly*, 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do"). Plaintiff does not explain the benefit he conferred upon Defendants or that he provided any labor or services to them. As such, Plaintiff's claim for unjust enrichment fails. Accordingly, Count Nine is dismissed.

### 8.   COUNT X

Count Ten alleges a civil conspiracy against Defendants to commit fraud and RICO violations. (Am. Compl. at 54.) To allege a civil conspiracy under New Jersey law, a plaintiff must demonstrate "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). The "gist" of the civil conspiracy claim is not the unlawful agreement but the underlying predicate tort. *Id.* (quoting *Bd. of Educ. v. Hoek*, 183 A.2d 633 (N.J. 1962)).

In support of his conspiracy claim, Plaintiff alleges that "Defendants made an agreement to defraud Plaintiff" which subsequently harmed Plaintiff. (Am. Compl. at 55.) However, as discussed *supra*, the Court has dismissed the underlying fraud and RICO claims. As Plaintiff's conspiracy claim depends on the existence of these dismissed claims, Plaintiff's conspiracy claim likewise fails. *See J.S. v. L.M.S.*, No. A-2332-20, 2022 WL 4242308, at *5 (N.J. Super. Ct. App. Div. Aug. 31, 2022) ("Because plaintiff failed to set forth a legally cognizable claim of intentional infliction of emotional distress, his cause of action for conspiracy and aiding the commission of a

tort must also fail as a matter of law."); *N.J. Dep't of Treasury ex rel. McCormac v. Qwest Commc'ns. Int'l, Inc.*, 904 A.2d 775, 783 (N.J. Super. Ct. App. Div. 2006) (explaining that a claim for aiding the commission of a tort requires proof of the underlying tort). Therefore, the Court dismisses Count Ten.

### 9.  COUNT XII

In Count Twelve, Plaintiff brings a claim for injunctive relief. (Am. Compl. at 56.) However, "[i]njunctive relief is not a cause of action, but only a remedy." *Monclova v. U.S. Bank Nat'l Ass'n*, No. 15-7383, 2016 WL 4260783, at *4 (D.N.J. Aug. 11, 2016), *aff'd sub nom.* 675 F. App'x 115 (3d Cir. 2017); *see also Educ. Impact, Inc. v. Danielson*, No. 14-937, 2015 WL 381332, at *19 (D.N.J. Jan. 28, 2015) (same). Consequently, the Court dismisses this claim.

### 10.  COUNT XIII

In Count Thirteen, Plaintiff alleges Defendants violated 18 U.S.C. § 1589, which forbids forced labor. (Am. Compl. at 57.) This statute is violated when a defendant "intends to cause a person in his employ to believe that if she does not continue to work, she will suffer the type of serious harm . . . that would compel someone in her circumstances to continue working to avoid that harm." *Futterknecht v. Thurber*, No. 14-7395, 2015 WL 4603010, at *4 (D.N.J. July 30, 2015) (quoting *United States v. Dann*, 652 F.3d 1160, 1170 (9th Cir. 2011)). Aside from his own threadbare assertions, Plaintiff does not allege any facts demonstrating that Defendants compelled Plaintiff into forced labor, or that he was threatened with serious harm unless he continued such servitude. (*See* Am. Compl. at 57.) Further, the purpose behind this statute concerns "combat[ing] human trafficking." *Thurber*, 2015 WL 4603010, at *4. This case does not involve same. As such, the Court dismisses Count Thirteen.

## 11. COUNT XIV

Plaintiff alleges violations of the Fair Labor Standards Act ("FLSA"), 28 U.S.C. § 206, and the New Jersey State Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, asserting Defendants failed to pay Plaintiff the minimum wage for his "hours worked and services provided." (Am. Compl. at 57–58.). "The minimum wage provisions of the FLSA, however, apply only to workers who are 'employees' within the meaning of the Act," and this "term must be interpreted in light of the 'economic reality' of the relationship between the parties." *Tourscher v. McCullough*, 184 F.3d 236, 242–43 (3d Cir. 1999) (quoting *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). In addition, courts "apply the same analysis to [claims under] the FLSA and NJWHL, as is customary in this district." *Shakib v. Back Bay Rest. Grp., Inc.*, No. 10-4564, 2011 WL 4594654, at *3 n.2 (D.N.J. Sept. 30, 2011).

Here, Plaintiff is not an employee of RHS, nor has he performed work for Defendants. Plaintiff's unsupported allegations that he worked for Defendants by "carrying their bag, suffering harassment and stalking and experiencing threats" do not establish an employer-employee relationship. (Am. Compl. at 57–58.); *Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005) (dismissing FLSA claim by student against school because student was not an employee for purposes of the Act). Therefore, the Court dismisses Plaintiff's claims in Count Fourteen.

## 12. COUNT XV

In Count Fifteen, Plaintiff alleges both negligent and intentional infliction of emotional distress ("IIED"). Plaintiff again recycles the same negligent infliction of emotional distress claims as in his original Complaint, and, as such, the Court adopts Judge Shipp's holding and reasoning from his Memorandum Opinion. (*See* Mem. Op. at 16.) Moreover, as Plaintiff appears to have failed to file a notice of tort claim, the Court dismisses the negligent infliction of emotional distress

claim. (*See id.* (citing *Queensbury v. Petrone*, No. 14-7230, 2015 WL 4715323, at *5 (D.N.J. Aug. 7, 2015).) In his Amended Complaint, Plaintiff additionally includes a claim for IIED. This claim likewise fails for this reason. *See Queensbury*, 2015 WL 4715323, at *5 (dismissing IIED claim for failure to file notice of tort claim).

Plaintiff's claim must be dismissed on the merits as well. To allege a claim for IIED, Plaintiff must establish "extreme and outrageous" conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 863 (N.J. 1988) (citations omitted). Defendants' conduct must be "so severe that no reasonable [person] could be expected to endure it." *McGillvary v. Riez*, No. 22-6430, 2022 WL 17253608, at *2 (D.N.J. Nov. 28, 2022) (alterations in original) (quoting *Soliman v. Kushner Co.*, 77 A.3d 1214, 1229 (N.J. Sup. Ct. App. Div. 2013). Further, IIED is an intentional tort, such that defendants must "intend both to do the act and to produce emotional distress" or, at a minimum, "act[] reckless in deliberate disregard of a high degree of probability that emotional distress will follow." *Buckley*, 544 A.2d at 864 (citations omitted).

Here, Plaintiff fails to allege "extreme or outrageous" conduct or that Defendants had the requisite intent to cause Plaintiff severe emotional distress. Plaintiff contends that Defendants "wantonly and recklessly violat[ed his] . . . inalienable rights," and "Defendants' conduct in forced labor is extreme and outrageous." (Am. Compl. at 58.) However, a Complaint's language that merely recites the elements of the offense with added inflammatory language does not allege sufficient facts to survive dismissal. *See Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000).

Further, upon review of the entire Amended Complaint, Plaintiff fails to provide specific allegations which would constitute an IIED claim. Plaintiff alleges that Defendants "engaged in the course of conduct directed at [him] that would cause [him] to fear for his safety and make him suffer emotional distress," including "terroristic threat[s] to [his] life by ordering Mr. Vincent to kidnap [him]." (SOF ¶¶ 64-70.) However, the Court "must disregard any conclusory allegations proffered in the complaint [and] is free to ignore legal conclusions or factually unsupported accusations." *Cohen v. ACB Receivables Mgmt., Inc.*, No. 13-5983, 2014 WL 4273306, at *1 (D.N.J. Aug. 29, 2014). Plaintiff provides no factual support for such fantastical allegations.

Further, Plaintiff fails to proffer evidence demonstrating that Defendants acted with the requisite intent, both with respect to the underlying actions and to producing the emotional distress. Plaintiff must allege facts conveying Defendants' intent to "produce emotional distress" or that Defendants "act[ed] recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *See Buckley*, 544 A.2d at 863. The Amended Complaint alleges that Defendants "purposefully and knowingly . . . engaged in the course of conduct" and "recklessly, callously, and unreasonably inflict[ed]" emotional distress on Plaintiff. (SOF ¶ 65; Am. Compl. at 58.) However, as the Court has stated over and over again, this mere "formulaic recitation of the elements" fails to state a claim for IIED. *Iqbal*, 556 U.S. at 678. Therefore, the Court dismisses Count Fifteen.

### 13. COUNT XVI

Plaintiff alleges claims for Defamation, Libel, and Slander under New Jersey state law in Count Sixteen. (Am. Compl. at 59.) These three causes of action are similar. The Supreme Court of New Jersey has succinctly explained these torts as follows:

> A statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation

> of the community or to deter third persons from associating with
> him. A defamatory statement may consist of libel or slander. As a
> general proposition, the short and simple distinction between the
> terms is that libel is defamation by written or printed words, or by
> the embodiment of the communication in some tangible or physical
> form, while slander consists of the communication of a defamatory
> statement by spoken words, or by transitory gestures.

*W.J.A. v. D.A.*, 43 A.3d 1148, 1153 (N.J. 2012) (citations and quotation marks omitted and cleaned

up).  New Jersey law defines defamation as:

> (1) a defamatory statement of fact; (2) concerning the plaintiff; (3)
> which was false; (4) which was communicated to a person or
> persons other than the plaintiff; (5) with actual knowledge that the
> statement was false or with reckless disregard of the statement's
> truth or falsity or with negligence in failing to ascertain the truth or
> falsity; and (6) which caused damage.

*Monroe v. Host Marriot Servs. Corp.*, 999 F. Supp. 599, 603 (D.N.J. 1998). To demonstrate

defamation, a plaintiff must show more than that their "own feelings were hurt or that [they]

suffered embarrassment. . . . Rather, the focus is on the effect of the alleged defamatory statement

on third persons." *McLaughlin v. Rosanio, Bailets & Talamo, Inc.*, 751 A.2d 1066, 1072 (N.J.

Super. Ct. App. Div. 2000).

Here, Plaintiff argues Defendants defamed him when they "produced [a] number of

documents accusing [him] of insubordination." (Am. Compl. at 59.) According to Plaintiff,

Defendants accused him "of being dangerous to 'public safety' and having psychological

problems" because he filed a lawsuit against them. (*Id.*)

Plaintiff fails to allege sufficient facts to maintain a defamation claim. First, Plaintiff does

not identify the alleged defamatory statements aside from vague references to documents. Second,

Plaintiff fails to show that any of these statements were published or made to any third parties.

Instead, Plaintiff merely states "Defendants produced a number of documents." The Amended

Complaint lacks any allegations that Defendants' statements were made to anyone other than Plaintiff or among themselves. *Kerrigan v. Otsuka Am. Pharm., Inc.*, 560 F. App'x 162, 168 (3d Cir. 2014) (affirming dismissal claim where at-issue statements were not made to third-party or published because "for defamation to occur, the defamatory statement must be published or communicated to a third person" (citations and quotation marks omitted)). Therefore, the Court dismisses Count Sixteen.

### 14. COUNT XVII

In Count Seventeen, Plaintiff alleges that Defendants Betze, Avery, Wyers, Polaski, and Vincent engaged in the "unauthorized practice of law" under N.J. Stat. Ann. § 2C:21-22 and 22a. (Am. Compl. at 60.) Section 2C:21-22 "establishes criminal penalties for the unauthorized practice of law," while § 2C:21-22a, "[t]he statute's civil counterpart . . . establishes a private cause of action for persons injured by a wrongdoer's unauthorized practice of law." *Banker v. Davidson, Dawson & Clark LLP*, No. A-3201-20, 2023 WL 2620057, at *2 (N.J. Super. Ct. App. Div. Mar. 24, 2023). To assert a civil claim under this statute, Plaintiff must show "1) defendant engaged in the unauthorized practice of law . . .; 2) plaintiff suffered an ascertainable loss; and 3) a causal relationship between defendant's unauthorized practice of law and the ascertainable loss." *Id.* (citations omitted). "What constitutes the practice of law is often required to be decided on a case by case basis because of the broad scope of the fields of law." *State v. Rogers*, 705 A.2d 397, 400 (NJ. Sup. Ct. App. Div. 1998). This statute "prohibit[s] non-lawyers from providing legal services and advice to other persons." *State v. Fineberg*, No. A-1705-08T4, 2010 WL 2990944, at *3 (N.J. Super. Ct. App. Div. Aug. 2, 2010). For example, New Jersey courts have found violations where non-lawyers have engaged in "preparing and filing certain tax returns, offering legal advice and active participation in the drafting of a will, drawing legal instruments, completing legal forms,

and preparing and filing quasi-judicial appeals." *Johnson v. McClellan*, 260 A.3d 861, 873 (NJ. Sup. Ct. App. Div. 2021).

Plaintiff claims that "[o]n multiple occasions, Defendants rendered advice to Edward Krasil as to legal matters and conclusions" and "gave opinions as to the law and its applicability to this case." (Am. Compl. at 60.) However, Plaintiff fails to sufficiently allege facts demonstrating that Defendants engaged in the unauthorized practice of law. Offering their opinions on "legal matters and conclusions" in letters to Plaintiff does not demonstrate Defendants were engaged in the practice of law. Such commonplace, garden-variety opining does not give rise to this cause of action, and Plaintiff does not demonstrate any ascertainable loss. In fact, aside from Plaintiff's conclusory statements, he does not describe Defendants' actions in any sufficient detail for the Court to conclude what in fact Defendants did as it relates to any purported unauthorized practice of law. Therefore, Count Seventeen is dismissed.

### 15. COUNT XVIII

In Count Eighteen, Plaintiff alleges Defendants Avery and Polaski engaged in the "unauthorized practice of psychology" under N.J. Stat. Ann. § 2C:21-20.2. (Am. Compl. at 60.) This statute does not provide a basis for an individual cause of action. *See* N.J. Assem. Comm. State., A.B. 732, 6/6/2013. As such, this claim is dismissed.

### 16. COUNT XIX

In Count Nineteen, Plaintiff alleges that Vincent committed perjury in violation of both federal and state law under N.J. Stat. Ann. § 2C:28-1 and 18 U.S.C. §1621 and 1623. Plaintiff alleges that Vincent perjured himself in his February 28, 2023 statement in his "Certification of Officer Vincent Edwards in Opposition to Plaintiff's Motion for Emergency Protective Order and Order to Show C[au]se Why Protective Order Should Not Be Granted." (*See* ECF No. 62-1.) All

three statutes cited by Plaintiff require an individual to make a false statement under oath.[16] The Court finds that Plaintiff fails to allege that Vincent made a false statement. Plaintiff alleges that Vincent lied when he submitted to the Court that he has "not seen Plaintiff since before the 2022 Thanksgiving Holiday." (Am. Compl. at 61.) According to Plaintiff, this statement is false because Plaintiff and Vincent met on September 30, 2022. (*Id.*) This, however, is prior to the 2022 Thanksgiving Holiday, which does not make Vincent's statement false. Further, upon a review of the entire Amended Complaint, the Court finds no allegations that could satisfy Plaintiff's perjury claim. Therefore, the Court dismisses Count Nineteen.

### 17. COUNT XX

In Count Twenty, Plaintiff alleges Defendants violated N.J. Stat. Ann. § 2C:12-10, the New Jersey state stalking statute. However, "New Jersey law does not provide a private right of action to bring a civil lawsuit pursuant" to this law. *Reaves v. Monmouth Univ.*, No. 22-1782, 2022 WL 17722803, at *6 (D.N.J. Dec. 15, 2022). Consequently, the Court dismisses Count Twenty.

---

[16] Section 1621 states:

> Whoever . . . in any declaration, certificate, verification, or statement under penalty of perjury . . . willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury . . .

18 U.S.C. § 1621.

Section 1623 states:

> Whoever under oath . . . in any declaration . . . [or] in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1623.

Under New Jersey state law,

> A person is guilty of perjury, a crime of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

N.J. Stat. Ann. § 2C:28-1.

### 18. COUNT XXVII

In Count Twenty-Seven, Plaintiff names five New Jersey state laws that he alleges Defendants have violated: N.J. Stat. Ann. §§ 10:5-3, 10:5-27.1, 2A:53A-21, 18A:37-14, and 18A:37-15. (Am. Compl. 76.) This count is a carbon copy of Count Nine of Plaintiff's original Complaint. As Judge Shipp stated, four of these statutes do not provide an individual cause of action. (*See* Mem. Op. 16 (dismissing counts under N.J. Stat Ann. §§ 10:5-3, 10:5-27.1, 18A:37-14, and 18A:37-15 and noting these statutes relate to "legislative findings and declarations," "attorneys fees," the definition of 'harassment, intimidation or bullying' as it relates to the discipline of pupils," and the "harassment, intimidation and bullying policy to be adopted by school districts").)

Section 2A:53A-21, on the other hand, does provide a private cause of action. However, this statute states: "A person, acting with purpose to intimidate an individual or group of individuals because of race, color, religion, gender, disability, sexual orientation, gender identity or expression, national origin, or ethnicity, who engages in conduct that is an offense under the provisions of the New Jersey Code of Criminal Justice." N.J. Stat. Ann. § 2A:53A-21. Judge Shipp dismissed this count because there was "no allegation that Defendants have committed any offense under the New Jersey Code of Criminal Justice." (Mem. Op. at 16.) While Plaintiff has amended his Complaint to assert counts under the New Jersey Code, he fails to provide any facts to support his assertion that Defendants' actions were based on Plaintiff's "race, color, religion, gender, disability, sexual orientation, gender identity, national origin, or ethnicity." As such, the Court dismisses Count Twenty-Seven.

### 19. Count XXVIII

The Court strains to understand the allegations in Count Twenty-Eight. Plaintiff lists a claim for "false claim of authority," six civil torts, and violations of the "Thirteenth Amendment," 18 U.S.C. §§ 1859, 1593A, and 1595, and 42 U.S.C. §§ 1983, 1985, and 1986. For the reasons discussed *supra*, the Court has already addressed and dismissed Plaintiff's tort claims and alleged violations of §§ 1859, 1983, 1985, and 1986. The Court thus turns to Plaintiff's claim under 18 U.S.C. § 1593A. Section 1593A makes it a crime to "knowingly benefit[] financially or by receiving anything of value, from participation in a venture" engaged in peonage, slavery or human trafficking. Section 1595 allows a victim of peonage, slavery or human trafficking to assert a civil remedy against the committer of the act or one who benefitted financially. As has been discussed, Plaintiff does not allege facts demonstrating he was in any way a victim of peonage, slavery or human trafficking. Indeed, in the section of his Amended Complaint describing this claim, Plaintiff devotes five pages to quoting Blackstone's Commentaries and Eighteenth Century Supreme Court cases discussing matters wholly irrelevant to his claims. (Am. Compl. at 77–82.) For these reasons, the Court dismisses Count Twenty-Eight.

### 20. Count XXIX

In Count Twenty-Nine, Plaintiff asserts claims for "Personal Services Contract" and Involuntary Servitude." The former is a term of art applicable in bankruptcy proceedings and does not apply here. *In re Cirillo*, 121 B.R. 5, 7 (Bankr. D.N.J. 1990). The latter "necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." *Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 384 (D.N.J. 2006), *aff'd,* 691 F.3d 527 (3d Cir. 2012) (quoting *United States v. Kozminski*, 487 U.S. 931, 952 (1988)). The Third

Circuit has limited claims of involuntary servitude to "labor camps, isolated religious sects, or forced confinement." *Id.* Plaintiff's claim here fails for a multitude of reasons. As discussed above, Plaintiff fails to allege facts demonstrating that he in any way worked for Defendants. Next, Plaintiff does not allege that he was "ever refused to allow exit" such that he was forcibly confined. *See id.* At most, Defendants "coerced [him] into going into the principal's conference room." (SOF ¶ 46.) Plaintiff fails to allege facts sufficient to show that he was subjected to involuntary servitude by Defendants, and thus Count Twenty-Nine fails.

### 21. COUNT XXX

In Count Thirty, Plaintiff seeks the Court to grant a "lawful mandate to impanel a Federal Grand Jury." (Am. Compl. at 90.) Plaintiff asks the Court to arrange for the prosecution of Defendants under 42 U.S.C. § 1987. This statute states:

> "The United States attorneys, marshals, and deputy marshals, the United States magistrate judges appointed by the district and territorial courts, with power to arrest, imprison, or bail offenders, and every other officer who is especially empowered by the President, are authorized and required, at the expense of the United States, to institute prosecutions against all persons violating any of the provisions of section 1990 of this title or of sections 5506 to 5516 and 5518 to 5532 of the Revised Statutes, and to cause such persons to be arrested, and imprisoned or bailed, for trial before the court of the United States or the territorial court having cognizance of the offense."

42 U.S.C. § 1987. However, it is "beyond the power of [the] Court" to compel a prosecution. *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970). The decision to instigate such proceedings "cannot be compelled by mandamus since the investigation and institution of criminal prosecution falls within" the discretion of federal and state prosecutors. *Id.* Therefore, the Court dismisses Count Thirty.

### 22. CLAIMS AGAINST ATTORNEY DEFENDANTS

The Amended Complaint names four lawyers or law firms as Defendants. (*See* Am. Compl. at 8.) Plaintiff alleges that Harrison, along with his law firm M&W, "provide[d] [the other Defendants] with an excuse to further increase his abuse and harassment of Plaintiff" when Harrison requested in an email that Plaintiff communicate about the litigation only with Harrison, rather than with Defendants. (SOF ¶¶ 80–83.) Plaintiff further claims that the Lenox Law Firm "approved actions aimed at depriving" Plaintiff of his rights, presumably by providing legal counsel to Betze. (*Id.* ¶¶ 85–86.) "The New Jersey litigation privilege ensures that '[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability.'" *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 523 (D.N.J. 2012) (quoting *Peterson v. Ballard*, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996). This privilege has been "extended . . . even to statements made by attorneys outside the courtroom." *Id.* (citations and quotation marks omitted). This "absolute" litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 661 A.2d 284, 289 (N.J. 1995) (citations and quotation marks omitted).

Here, the conduct complained about by Plaintiff is protected by the litigation privilege. The email to which Plaintiff complains was sent in response to an email from Plaintiff to both Betze and Harrison that attached discovery requests. (*See* ECF No. 114, Ex. E.) Harrison responded that "the Superintendent is represented by our office and you are not to copy him on communications relating to the case. You are to communicate with him solely through my office." (*Id.*) This communication does not deprive Plaintiff of his rights. Plaintiff initiated a legal proceeding against

Defendants who chose to be represented by counsel, who communicated with the opposing party on areas concerning the litigation. (*See generally* N.J. Rules Prof'l Conduct R. 4.2.) Further, aside from conclusory statements that Lenox worked to deprive Plaintiff of his rights, there are no facts to allege any unlawful conduct. The irony of Plaintiff's cause of action in this count is not lost on the Court: Plaintiff alleges various unlawful acts, including threats of kidnapping, extortion, and even murder, yet somehow complains that legal counsel's request to eliminate contact with the alleged malefactors is also actionable. All claims against the named attorneys and law firms are dismissed.

For the reasons stated above, the Court grants Moving Defendants' Motion to Dismiss, (ECF No. 113). In addition, upon review of the entire Amended Complaint and pursuant to 28 U.S.C. § 1915(e)(2), the Court dismisses Plaintiff's claims against all Defendants for failure to state a claim for which relief may be granted.

## 23. DISMISSAL WITH PREJUDICE

The court need not dismiss without prejudice and with leave to amend if amendment would be "inequitable or futile." *See also Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, No. 16-6510, 2019 WL 2281632, at *4 (D.N.J. May 29, 2019) (dismissing with prejudice because plaintiff had repeatedly failed to correct the same deficiency in his pleading); *Henry v. City of Allentown*, No. 12-1380, 2013 WL 6409307, at *2 (E.D. Pa. Dec. 9, 2013) ("[A] District Court may exercise its discretion and refuse leave to amend if such amendment would be futile, particularly when a plaintiff has had multiple opportunities to improve the pleadings."); *Mesadieu v. City of Linden*, No. 18-14561, 2019 WL 2514715, at *5 (D.N.J. June 18, 2019), *aff'd*, 791 F. App'x 294 (3d Cir. 2020) (dismissing with prejudice and finding any "further amendment would be futile" where the Court previously "set forth the deficiencies with Plaintiff's claims and Plaintiff

failed to cure any of those deficiencies in the FAC."); *Callaway v. New Jersey State Police Troop A*, No. 12-5477, 2015 WL 1202533, at *7 (D.N.J. Mar. 17, 2015) (dismissing claims with prejudice where "the underlying circumstances from [the relevant factual period] have not substantially changed" and Plaintiff had previous opportunities to plead his claims); *Prince v. Trumark Fin. Credit Union*, No. 22-3097, 2022 WL 10584444, at *5 (E.D. Pa. Oct. 18, 2022), *appeal dismissed*, No. 22-3173, 2023 WL 3529406 (3d Cir. Mar. 2, 2023) (dismissing "claim with prejudice as [Plaintiff] has now twice failed to plead" his claims).

Here, Plaintiff has had repeated attempts to cure his deficient pleading. Plaintiff failed to abide by Judge's Shipp admonitions where he advised Plaintiff to ensure that his "claims, defenses, and other legal contentions *are warranted by existing law or by a nonfrivolous argument* for extending modifying, or reversing existing case law or for establishing new law," (ECF No. 48, at 4 (quoting Fed. R. Civ. P. 11(b)(2)) (emphasis in original)), or where his prior Memorandum Order clearly laid out the deficiencies of each claim, (ECF No. 72). Instead, Plaintiff's ninety-one page Amended Complaint only expands and expounds on the prior deficient Complaint by adding numerous additional Defendants and claims, but without setting forth any coherent facts to support a bonafide cause of action.

The underlying facts concerning Plaintiff's objection to RHS's Bag Policy have not changed. Plaintiff was provided an ample opportunity to amend and provide a "short and plain" statement of the case, but failed to do so. *See e.g.*, *Wilcher v. Potter*, 2009 WL 235497, at *2. Generally, while dismissal with leave to re-file would be an appropriate result, here, Plaintiff has already been availed of this opportunity. Thus, allowing Plaintiff to file a second amended complaint would only serve to needlessly extend this litigation, and subject the Defendants to additional cost in added time, attention and financial expense. As such, the Court finds that any

amendment would be futile. Accordingly, the Court will dismiss the Amended Complaint with prejudice.

### B. PLAINTIFF'S OTHER PENDING MOTIONS

Having dismissed Plaintiff's Amended Complaint in full, the Court now turns to Plaintiff's pending motions on the docket.

#### 1. PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION

On July 17, 2023, Plaintiff filed a motion seeking an "Emergency Preliminary Injunction."[17] (ECF No. 86.) Multiple Defendants filed briefs in opposition, (ECF Nos. 87 and 98), to which Plaintiff replied, (ECF No. 100). Plaintiff filed a second motion for a preliminary injunction on September 8, 2023. (ECF No. 112.) Because the Amended Complaint is dismissed in full, Plaintiff's motions are denied as moot. *Aemer v. Brewer*, No. 18-1402, 2019 WL 13260173, at *1 (D.N.J. Apr. 1, 2019), *aff'd sub nom.*, 808 F. App'x 73 (3d Cir. 2020) (holding motion for preliminary injunction moot because the Court dismissed Plaintiff's complaint); *KDDI Glob. LLC v. Fisk Telecom LLC*, No. 17-5445, 2017 WL 5479512, at *7 (D.N.J. Nov. 15, 2017) (same).

#### 2. PLAINTIFF'S MOTIONS FOR RECONSIDERATION OF JUDGE'S SHIPP PRIOR OPINION AND ORDER

Plaintiff filed two motions, (ECF Nos. 75 and 77), seeking the Court to reconsider Judge Shipp's May 26, 2023 Opinion and Order, (ECF Nos. 72 and 73), as well as a "Motion to Declare

---

[17] The exact relief Plaintiff pursues is unclear. In his motion, he seeks a myriad of prohibitions against Defendants. These include prohibiting Defendants from (1) "blocking a doorway to interfere with Plaintiff's ability to enter/exit the room or the building"; (2) "in-the-hall involuntary interactions with Plaintiff during which, Defendants . . . would subject Plaintiff to unspecified threats and consequences"; (3) "instructing or directing anyone else to harass, socially pressure, psychologically abuse, emotionally traumatize, and intimidate Plaintiff"; (4) instructing or directing anyone else from interfering with the Plaintiff's going to and from, and entering or exiting [RHS]"; (5) violat[ing] Plaintiff's preexisting property in his rights"; (6) improperly using judicial proceedings without any other purpose but to secure for Defendants an opportunity for the further act of depriving the Plaintiff of his constitutionally protected rights"; (7) seizing and searching Plaintiff himself as well as his property"; and (8) approaching Plaintiff closer than 6 feet pending the outcome of this litigation." (*See* Mot. 1–3.)

Memorandum and Order Documents 72 and 73 Void For Being Repugnant to Common Law, Thirteenth Amendment, The Takings Clause and Unconstitutional Conditions Doctrine," (ECF No. 83). Multiple Defendants filed responses to Plaintiff's motions for reconsideration, (ECF Nos. 78 and 80), and Plaintiff filed his own replies, (ECF Nos. 79 and 81). The Court denies Plaintiff's motions as moot. *Call v. Czaplicki*, No. 09-6561, 2011 WL 2532712, at *9 n.9 (D.N.J. June 23, 2011) ("Plaintiffs' motion for reconsideration is non-justiciable because '[b]y filing a Second Amended Complaint, Plaintiffs have supplanted the Complaint, thereby rendering any motion for reconsideration advisory.'" (quoting *Meserole v. Sony Corp. of Am., Inc.*, No. 08-8987, 2009 WL 2001451, at *1 (S.D.N.Y. July 9, 2009)); *Operative Plasterers & Cement Masons Int'l Assoc. Loc. 8 v. AGJ Const., LLC*, No. 08-6163, 2009 WL 4796764, at *4 (D.N.J. Dec. 9, 2009) (denying motion for reconsideration as moot where Plaintiff was granted leave to file amended complaint).

### 3.  PLAINTIFF'S MOTIONS FOR SANCTIONS

Plaintiff has filed three separate motions to sanction Defendants' counsel, twice against Eric Harrison, (ECF Nos. 99 and 107), and once against Stephanie J. Viola and Patrick Carrigg, (ECF No. 105). Plaintiff also filed a separate motion seeking a hearing his sanctions motions. (ECF No. 111.)[18] Plaintiff argues that Defendants "claim baseless beliefs in their filing[s] with the Court," including "numerous claims of fact and law based on frivolous arguments to cause delays." (ECF No. 105 at 3.)

Pursuant to Rule 11, a court may impose sanctions on attorneys. Rule 11 requires that any "pleading, written motion, or other paper" filed or submitted to the Court "not be[] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost

---

[18] This motion also sought a hearing on one of Plaintiff's other previously filed motions for default, (ECF No. 93), which was denied by the Honorable Rukhsanah L. Singh (ECF No. 109).

of litigation." Fed. R. Civ. P. 11(b). The goal of Rule 11 is accountability, *Keister v. PPL Corp.*, 677 F. App'x. 63, 68 (3d Cir. 2017), and its central purpose is to deter baseless filings, *Howe v. Litwark*, 579 F. App'x. 110, 115 (3d Cir. 2014) (quoting *Cooter & Geil v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)). To secure Rule 11 sanctions, a party must make a sanctions motion "separately from any other motion and must describe the specific conduct that allegedly violates [Rule 11]." Fed. R. Civ. P. 11(c)(2). Any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct. Fed. R. Civ. P. 11(c)(4).

"It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court." *Brubaker Kitchens, Inc. v. Brown*, 280 F. App'x. 174, 185 (3d Cir. 2008) (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 201 n.6 (3d Cir. 2008)); *see Renex NY Corp. v. Supply Depot LLC*, No. 23-489, 2023 WL 4580965, at *5 (D.N.J. July 18, 2023) ("The imposition of Rule 11 sanctions is at the discretion of the district court."). However, the standard under Rule 11 is "stringent." *Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391 n.7 (3d Cir. 2016). Sanctions are reserved for "claim[s] . . . wholly without merit" and "are reserved for correcting litigation abuse." *Renex*, 2023 WL 4580965, at *5 (citations omitted).

The Court discerns no basis for imposing sanctions against Defendants' counsel. Having carefully reviewed Plaintiff's filings, the conduct for which Plaintiff complains is standard litigation practice and in no way sanctionable. For example, Plaintiff believes Defendants' opposition to Plaintiff's motion for a preliminary injunction is "based on . . . inadmissible fantasy." (ECF No. 99 at 4.) In contrast, Defendants' brief cites facts from Judge Shipp's Memorandum Opinion and then proceeds to argue against the imposition of a preliminary injunction with legal citations and analysis. (*See generally* ECF No. 87.) Further, Plaintiff "simply has not shown that

the [Defendants have] failed to make a reasonable investigation into either the facts or the law to support [their] filings or that [Defendants have] unreasonably and vexatiously multiplied proceedings in bad faith." *Robinson v. New Jersey*, No. 11-6139, 2013 WL 1903335, at *2 (D.N.J. May 7, 2013). Defendants have merely responded to Plaintiff's myriad filings, as they are permitted and required to do in order to represent their clients. Therefore, the Court denies Plaintiff's motions for sanctions and request for a hearing on same.[19]

---

[19] Finally, Plaintiff filed a "Motion for Rule 16 Conference to Expedite Disposition of the Action." (ECF No. 116.) The Court dismisses this motion as moot because the Amended Complaint has been dismissed in full. *See Jacobsen v. Hartford Ins. Co. Flood & Home*, No. 14-3094, 2020 WL 2127014, at *1 (D.N.J. May 5, 2020) (denying motion for conference as moot because the Court dismissed case).

IV.     **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss, (ECF No. 113). The Amended Complaint, (ECF No. 84), is hereby **DISMISSED** in its entirety. All other motions are hereby **DENIED**. (ECF Nos. 75, 77, 83, 86, 99, 105, 107, 111, 112, 115, and 116.)

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: October 12, 2023